DEPARTMENT OF TREASURY OF INDIANA *v.*
MUESSEL ET AL.

[No. 27,489. Filed March 18, 1941.]

*Omer Stokes Jackson,* Attorney General, and *Joseph P. McNamara,* Deputy Attorney General, for appellant.

*Jones, Obenchain & Butler,* of South Bend, for appellees.

SWAIM, C. J.—This is an action to recover certain Gross Income Tax paid by the appellees during the year 1933, the action being authorized by § 12, Indiana Gross Income Tax Act of 1933. Acts of 1933, ch. 50, p. 388, § 64-2601, Burns' 1933, § 15981, Baldwin's 1934. From a judgment for the appellees the appellant is prosecuting this appeal, assigning as error the overruling of the motion for a new trial, which specified the grounds that the decision of the court was not sustained by sufficient evidence and was contrary to law.

The undisputed facts disclose that in 1931 Muessel-Vassar, Inc., was organized under the laws of Indiana. It was incorporated as a holding company by the stockholders of the Vassar Realty Company and the Muessel Brewing Company. Thereupon said stockholders delivered to said Muessel-Vassar, Inc., all of their stock in the other two named corporations and received in return therefor all of the authorized stock of Muessel-Vassar, Inc., to-wit: 1000 shares of class "A" stock and 1000 shares of class "B" stock. The former shares were issued, share for share, to the stockholders of the Vassar Realty Company and the latter were issued, share

for share, to the stockholders of the Muessel Brewing Company. The Muessel-Vassar, Inc., acquired no assets of any kind other than the stock of the Vassar Realty Company and of the Muessel Brewing Company and its only income was from dividends received by it on the Vassar Realty Company stock. In 1933 Muessel-Vassar, Inc., as one step in its dissolution, distributed the 1000 shares of Muessel Brewing Company stock to the holders of its class "B" stock, which stock was in turn surrendered by said stockholders to said Muessel-Vassar, Inc. Thereafter it likewise distributed the 1000 shares of Vassar Realty Company stock to the holders of its class "A" stock upon the delivery and surrender of said class "A" stock for cancellation.

The Muessel Brewing Company shares and the Vassar Realty Company shares were distributed to the holders of its class "B" stock and the holders of its class "A" stock respectively in proportion to their respective holdings of such stock. Upon the completion of these transactions each stockholder of the Vassar Realty Company and each stockholder in the Muessel Brewing Company owned exactly the amount of stock in these corporations that he had owned prior to the organization of the Muessel-Vassar, Inc. The said holding company held no assets and was dissolved.

The question presented by this appeal is whether by such redistribution of said stock to the original owners thereof, they thereby received income taxable under the Gross Income Tax Law of 1933.

The appellant contends that the receipt by the appellees of said stock from Muessel-Vassar, Inc., constituted gross income under the terms of said act and is, therefore, taxable. The appellant quotes many definitions and explanations of "gross income" from the decisions of this and other courts. While the general definition

of "gross income" would probably include the receipts here in question, we are bound by the definition of this term as set out in subsection "f" of § 1 of said Act which reads as follows:

"The term 'gross income,' except as hereinafter otherwise expressly provided, means the gross receipts of the taxpayer received as compensation for personal services, and the gross receipts of the taxpayer derived from trades, businesses or commerce, and the gross receipts proceeding or accruing from the sale of property, tangible or intangible, real or personal, or service, or any or all of the foregoing, and all receipts by reason of the investment of capital, including interest, discount, rentals, royalties, fees, commissions or other emoluments, however designated, and without any deductions on account of the costs of property sold, the cost of materials used, labor cost, interest or discount paid, or any other expense whatsoever, and without any deductions on account of losses; *Provided, however,* That the term 'gross income' shall not include cash discounts allowed and taken on sales; nor freight prepaid by the taxpayer and repaid to him by the purchaser; goods, wares or merchandise, or the value thereof, returned by customers when the sale price is refunded either in cash or by credit; nor the sale price of any article accepted as part payment on any new article sold, if and when the full sale price of the new article is included in the 'gross income' subject to taxation under this act; *Provided, further,* That 'gross income' shall include the proceeds from the sale of any property handled on consignment by the taxpayer."

Unless the transaction comes clearly within one of the provisions of this definition it cannot be taxed as gross income. It is a settled rule of statutory construction that statutes levying taxes are not to be extended by implications beyond the clear import of the language used, in order to enlarge their operation, so as to embrace transactions not specifically

pointed out. In case of doubt such statutes are to be construed more strongly against the state and in favor of the citizen. *United States* v. *Merriam* (1923), 263 U. S. 179, 44 S. Ct. 69; *Gould* v. *Gould* (1917), 245 U. S. 151, 38 S. Ct. 53; *People* v. *Mobile & Ohio R. R. Co.* (1940), 374 Ill. 376, 29 N. E. (2d) 604.

The appellant does not contend that the gross receipts here in question were received: (1) as compensation for personal services; (2) as being derived from trades, business, or commerce; or (3) as proceeds or accruals from the sale of property, tangible or intangible, real or personal, or service. The appellant does contend that the receipt by the appellees of said stock constituted "receipts by reason of investment of capital."

In *Department of Treasury* v. *Crowder* (1938), 214 Ind. 252, 15 N. E. (2d) 89, this court said that the return of invested capital by a final distribution to the shareholders of the net assets of a corporation on the voluntary dissolution of such corporation was taxable as a "receipt by reason of the investment of capital." However, on being more fully advised, and upon a careful reconsideration of the question we are of the opinion that it was not the intention of the Legislature to make the return of invested capital taxable under the clause "all receipts by reason of the investment of capital" as used in this definition.

The entire clause of the definition which is here in question reads as follows:— "and all receipts by reason of the investment of capital, including interest, discount, rentals, royalties, fees, commissions or other emoluments, however designated." We are of the opinion that "including" as here used is a word of limitation and that the words "interest, discount, rentals, royalties, fees, commissions and other

emoluments, however designated" designate the type of receipts from the investment of capital which the Legislature intended to tax by this provision, namely all types of profits or earnings.

The word "including" may be used as meaning "also" or "in addition to," that is, as a term of enlargement. But this is the exceptional use of the word. Its ordinary use is as a term of limitation, as specifying particularly that which belongs to the genus. *Montello Salt Co.* v. *Utah* (1911), 221 U. S. 452, 31 S. Ct. 706. Used here as a term of limitation it would mean the same as the words "such as."

If the Legislature had intended to use the word "including" here as a term of enlargement rather than as a term of limitation, they could have modified it with the phrase "but not in limitation of the foregoing" as they did in section 3(f) of said Act where the word "including" was not used as a term of limitation.

It is significant to note that in the amendment of the definition of the term "gross income" (Acts of 1937, ch. 117, p. 604, 607), this particular provision of the definition was amended by inserting immediately after the word "including" the words "but not in limitation thereof." When a statute is amended in this manner there is a presumption that the amendment was intended to change the meaning of the term "including" and since the meaning of the amendment is clear we must assume that the Legislature interpreted the word "including" as used in the 1933 Act as a term of limitation, limiting the application of the preceding general words. *Chism* v. *State* (1932), 203 Ind. 241, 244, 179 N. E. 718; *State, ex rel.* v. *Board* (1925), 196 Ind. 472, 482, 149 N. E. 69.

A consideration of the other provisions of this definition also leads us to believe that this particular pro-

vision was intended to cover only profits or earnings from invested capital. If the capital in question had been invested in trades, businesses, or commerce by the appellees and had later been returned to them as receipts derived from such trades, businesses or commerce it would have been taxable under the second provision of the definition. If the appellees on the other hand had sold their shares of stock in the Muessel-Vassar, Inc., the capital represented thereby would have been taxable as a gross receipt proceeding or accruing from the sale of intangible personal property. But the appellant insists that the transactions here in question did not even amount to an "exchange" of property. If this be true it necessarily follows that they could not have been "sales" of property.

Thus we see that this definition of "gross income" by the provisions covering all receipts from trades, businesses, and commerce and all receipts from sales, provided for the taxation of the ordinary transactions involving the return of invested capital.

To have practically full coverage on the gross receipts of the taxpayer, it only remained for this provision to cover the gross earnings or profits realized on invested capital. It is true that this provision so interpreted would not cover the receipt of borrowed money, either by the borrower or the lender, nor the return of the capital invested in bonds or preferred stocks at the maturity of such bonds or stocks, but such receipts may well be considered as being in a different classification from the ordinary receipts in business or from sales of property in which capital has been invested. If we were to accept the interpretation contended for by the appellant, all such receipts would be covered by this pro-

vision of the definition. In the administration of the law, however, the appellant has construed the Act as not applying to such receipts and pursuant to the provisions of § 25 (a) of said Act, has issued regulations accordingly. Section 25 (a) authorizes the promulgation by the Department of Treasury of "such rules and regulations *not inconsistent* with this act . . ." (Our italics.) If the appellant considered the receipt of borrowed money or the payment of bonds and matured stocks at maturity taxable under this provision then the exemption of such receipts is not authorized and regulations of the department recognizing such exemptions are contrary to the statute.

Counsel for appellant calls our attention to the fact that in the next subsection the statute defines "gross income" on certain types of business of financial institutions as "gross earnings" and insists that the same language would have been used in the subsection in question if the Legislature had intended for the provision to have the meaning for which the appellee contends. While we have a rule of construction that the same word used in the same manner in different places in the same statute is presumed to be used with the same meaning, it does not follow that different words so used shall be presumed to have a different meaning, even though the ordinary meaning of the words is the same.

Appellant also contends that the words following "including," and which show the type of receipts intended, do not relate to the same subject-matter as "receipts by reason of the investment of capital." Each of these words considered in a broad sense might be used to designate a receipt which could be received by reason of the investment of capital. Earnings received by persons lending money are often referred

to as "fees" or "commissions" and one broad definition of "emolument" is "benefit or advantage." A broad definition is clearly intended here for the word "emolument" is followed and modified by the words "however designated."

It is also contended by the appellant that the words immediately following this provision of the definition to-wit: "and without any deductions on account of the costs of property sold, the cost of materials used, labor cost, interest or discount paid, or any other expense whatsoever, and without any deductions on account of losses" should be considered to be a part of this provision and, so considered, prove that the provision covers the return of invested capital. A consideration of these words, however, seems to clearly indicate that they also apply to the preceding provisions of the definition.

The definition first describes the various types of receipts which are to be taxed and then in these words states that no deductions are to be taken for any expense, specifying different types of expense applicable to the different types of receipts. "Deductions on account of the costs of property sold" applies to and modifies the preceding provisions relating to receipts from the sale of property and from businesses or commerce. "Cost of materials used, labor cost," and "interest or discount paid" also refers to receipts from trades, businesses or commerce. Since these words clearly were intended to apply to the other provisions of the definition they cannot be considered as enlarging the meaning of "receipts by reason of the investment of capital" as limited by the intervening words "including interest, discount, rentals, royalties, fees, commissions or other emoluments."

We hold that the assets distributed to the appellees by Muessel-Vassar, Inc., in the final distribution of its assets to its stockholders as a part of its plan of dissolution did not constitute taxable gross income as defined in § 1 of Ch. 50, of the Acts of 1933.

The judgment is, therefore, affirmed.

Fansler, J., dissents.

NOTE.—Reported in 32 N. E. (2d) 596.