194 N.J. Super. 168 (1984)
476 A.2d 800
AMERICAN TELEPHONE AND TELEGRAPH COMPANY, PLAINTIFF-APPELLANT CROSS-RESPONDENT,
v.
DIRECTOR, DIVISION OF TAXATION, DEFENDANT-RESPONDENT CROSS-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Argued January 31, 1984.
Decided February 10, 1984.
*170 Before Judges BOTTER, PRESSLER and O'BRIEN.
Jay R. Reuben argued the cause for plaintiff (James H. Peters and Jay R. Reuben on the brief).
Harry Haushalter, Deputy Attorney General, argued the cause for defendant (Irwin I. Kimmelman, Attorney General of New Jersey, attorney; Deborah T. Poritz, Deputy Attorney General, of counsel; Harry Haushalter on the brief).
The opinion of the court was delivered by BOTTER, P.J.A.D.
We affirm the judgment below substantially for the reasons stated by Judge Crabtree. Some additional comments are appropriate.
Plaintiff American Telephone and Telegraph Company (AT & T) appeals, and the Director of the Division of Taxation cross appeals, from a decision of the Tax Court, 4 N.J. Tax 638, interpreting the Corporation Business Tax Act (CBTA), N.J.S.A. 54:10A-1 et seq., and pertinent regulations. The decision deals with the "receipts fraction" specified in § 6(B), N.J.S.A. 54:10A-6(B), which is part of the business allocation factor. The issues involve the treatment of two types of revenue received by AT & T. One type is revenue which returns to AT & T from investments made with its idle cash.[1] The other is revenue received from the sale of surplus equipment which had been used by AT & T in its telecommunications business.
*171 A short description of the nature and history of the CBTA is contained in F.W. Woolworth Co. v. Director, Div. of Taxation, 45 N.J. 466 (1965). The CBTA tax is computed by adding together specified percentages of a corporation's net worth and net income. N.J.S.A. 54:10A-4(d), -4(k), and -5. When the CBTA was first enacted by L. 1945, c. 162, net worth was the only basis used. The income tax element was added by L. 1958, c. 63. A business allocation factor is used to measure the relationship of business operations in New Jersey with that of the entire operations of a corporate enterprise doing a multistate and international business. N.J.S.A. 54:10A-4(b); N.J.S.A. 54:10A-6. The formula provided in § 6, N.J.S.A. 54:10A-6, requires that a portion of the entire net worth used to measure the tax imposed by § 5(a), N.J.S.A. 54:10A-5(a), and a portion of entire net income used to measure the tax imposed by § 5(c), N.J.S.A. 54:10A-5(c), be determined by multiplying the entire net worth and entire net income by the average of fractions specified in §§ 6(A), (B) and (C). These fractions represent the New Jersey portion of (a) the value of real and tangible personal property, (b) business receipts and (c) business payroll divided respectively by the total value of tangible property, receipts and payroll of the entire enterprise. The only fraction we are concerned with is the "receipts fraction." This is defined by N.J.S.A. 54:10A-6(B). In a simplified version the fraction is:
New Jersey related receipts from sales, services, etc. Total receipts of taxpayer from sales, services, etc.
As stated above, the issues on appeal concern the inclusion or exclusion in this fraction of (a) revenues received by AT & T from investment of its idle cash in short term obligations, consisting of bonds, certificates of deposits (CDs), commercial paper and similar obligations (termed herein "investment paper") and (b) the sale of business equipment used by AT & T which it determined was no longer needed. The director contends *172 that only interest earned on investment paper is to be included in the receipts fraction.[2] The taxpayer contends that all revenues received upon redemption or sale of investment paper should be included in the fraction and that all revenues received from the sale of its used equipment should also be included in the fraction. In the Tax Court, Judge Crabtree rejected AT & T's position except that he held that the net gain (see infra, note 4), if any, from the sale or redemption of investment paper and from the sale of business equipment should be included in the fraction. The director objects even to the inclusion of net gains resulting from these sales or redemptions, contending that such revenues can be included only when sales are made by a taxpayer regularly engaged in the business of selling investment paper or used equipment of the nature involved. Substantially for the reasons stated by Judge Crabtree, as modified and supplemented by this opinion, we concur in Judge Crabtree's conclusions. This disposition makes it unnecessary for us to consider the director's alternate contention, which is not disputed by AT & T, that the director has the power under N.J.S.A. 54:10A-8 to exclude revenues from these sources if they improperly distort the business allocation factor in a particular case.
We uphold as a general matter the exclusion of gross revenues received by plaintiff from the sale or maturity of investment paper. As Judge Crabtree observed, idle cash can be turned over repeatedly by investment in short term securities. It is no true reflection of the scope of AT & T's business done within and without New Jersey to allocate to the numerator or the denominator of the receipts fraction the full amount of money returned to AT & T upon the sale or redemption of investment paper. To include such receipts in the fraction would be comparable to measuring business activity by the *173 amount of money that a taxpayer repeatedly deposited and withdrew from its own bank account. The bulk of funds flowing back to AT & T from investment paper was simply its own money. Whatever other justification there is for excluding such revenues from the receipts fraction, it is sufficient to say that to do otherwise produces an absurd interpretation of § 6(B). "It is axiomatic that a statute will not be construed to lead to absurd results. All rules of construction are subordinate to that obvious proposition. [Even the rule of strict construction] does not mean that a ridiculous result shall be reached because some ingenious path may be found to that end." State v. Provenzano, 34 N.J. 318, 322 (1961).
The principle may be illustrated by reference to plaintiff's 1972 corporation business tax return. In 1972 total receipts used in the denominator of the receipts fraction was $8,736,961,157. Of this amount, proceeds received from the sale or redemption of investment paper totalled $6,815,792,303, of which more than $5.8 billion dollars represented money flowing back to AT & T from certificates of deposit (CDs), commercial paper and banker's acceptances. In other words, the aggregate receipts from AT & T's business of rendering telecommunications services nationally and internationally in 1972 was approximately $1.9 billion. A distorted measure of AT & T's 1972 business activity was created by including in the receipts fraction $6.8 billion in aggregate funds returned from the investment and reinvestment of idle cash. It is no answer, as argued on behalf of AT & T, that after the division challenged these receipts, AT & T no longer included revenues from CDs, commercial paper and banker's acceptances in its corporation business tax returns. The partial change in AT & T's practice reflects the logic of the Tax Court's holding. Yet AT & T continued to include in the receipts fraction revenues received from the sale or redemption of other investment paper, such as state and federal government obligations. Testimony of the manager of AT & T's cash operations group showed that its total cash and cash investments at year end of the tax years in *174 question varied between $605 million and $1.2 billion. However, because of the turnover of the same funds, AT & T allocated much larger amounts to the denominator of its receipts fraction than AT & T possessed at any given point in time in the years in question. The result improperly reduced the fraction of receipts from operations in New Jersey when divided by the claimed total receipts from all of AT & T's operations.
Judge Crabtree held that, except for gains, proceeds from the sale of tangible personal property no longer used by AT & T in its business should not be included in the receipts fraction. The director takes the position that no part of revenue derived from sales not made out of inventory in the ordinary course of business should be included. Except for gains derived from such sales, which should be included as Judge Crabtree held, we agree with the director's position. This position is expressed by N.J.A.C. 18:7-8.9. Contrary to Judge Crabtree's view, the regulation does reflect language contained in N.J.S.A. 54:10A-6(B)(1) and (2). These sections deal with sales of tangible personal property located within or outside New Jersey "at the time of the receipt of or appropriation to the orders [for such property]." The language is appropriate for sales made out of inventory on orders of customers in the regular course of a taxpayer's business. This language mirrors the sample tax return which was appended to the Report of the Commission on Taxation of Intangible Property (1945) (First Report).
The Corporation Business Tax Act was adopted in 1945 in response to the First Report. United States Steel Corp. v. Director, Div. of Taxation, 38 N.J. 533, 539 (1962). The First Report recommended in part that corporations be taxed "on that portion of their entire net worth which is allocable to New Jersey according to the gross receipts-tangibles-payroll method of allocation." At 76. In describing the contents of the "receipts fraction," the First Report spoke of sales of tangible *175 personal property in relation to their location within or without New Jersey "at the time of the receipt of or appropriation to the orders ... received or accepted [for such property]." At 77. In discussing the problem of allocating corporate income based upon gross receipts from sales, the First Report refers to profits from sales "attributable to [a state's] marketing area or ... sales organization operating within its boundaries." At 78. Clearly, the First Report contemplated that the sales component of the receipts fraction would represent sales of property by a dealer regularly engaged in selling such property. This is shown further by its discussion of the "place of production of merchandise, or of the appropriation to orders," as compared with a "`sales office' or `destination' method of allocating gross receipts." Ibid. Consistent with this, the instructions included in the sample form of tax return contained in the First Report excluded from "other business receipts earned in New Jersey" and from "total receipts" sales of capital assets, defined as "sales of property not held by the taxpayer as a dealer for sale to customers in the regular course of business." Id. at 101.[3]
*176 The sales of tangible personal property in this case consisted mainly of central office telephone transmission type of equipment and low capacity cables which were deemed surplus to AT & T and were sold mainly to its subsidiaries. Although such sales were made regularly from time to time, AT & T's principal business was not the sale of surplus equipment. The equipment was bought initially for AT & T's own use and not for resale to customers upon orders received. Accordingly, the sense of the statute shown by its legislative history requires that receipts from sales of surplus equipment in this case be excluded from the receipts fraction.
The instructions on the sample tax return included in the First Report could be read to exclude gains from the sale of tangible and intangible property held by a taxpayer who did not deal in such property in the regular course of its business. We note that "business receipts" were defined in these instructions to include interest and dividends received, a matter not in dispute in this case. The instructions also support the exclusion of all proceeds from the sale of intangible personal property unless held by a dealer in such property "for sale to customers in the regular course of business." Ibid. However, Judge Crabtree included gains from sales of tangible and intangible property within the definition of "all other business receipts," N.J.S.A. 54:10A-6(B)(6), by reading the provisions of N.J.S.A. 54:10A-4, -5 and -6 in pari materia. As he observed, N.J.S.A. 54:10A-4(k) defines "entire net income" to include gain from the sale or conversion of a capital asset, and N.J.S.A. 54:10A-5(c) imposes a tax based on "entire net income" allocable to New Jersey as provided by § 6, N.J.S.A. 54:10A-6. Accordingly, Judge Crabtree concluded that net gains[4] on the sale of personal property should be treated as "other business *177 receipts" in the receipts fraction. This interpretation is justified by the amendment of the statute in 1958 to reflect the net income tax base of the taxpayer. Thus it is proper to apply the formula to reflect items of income such as gains on the sale of property. Moreover, the initial legislative history gives no clear indication of the draftsman's intent. For these reasons we concur in Judge Crabtree's holding on this issue. To the extent that the holding in this case conforms with the provisions of N.J.A.C. 18:7-8.9 we reject Judge Crabtree's conclusion that the regulation "imposes a restriction not warranted by the statute." 4 N.J. Tax at 649.
The judgment entered by the Tax Court is affirmed.
NOTES
[1] AT & T maintained a pool of funds which it received primarily as dividends from its subsidiary corporations and from the sale of stock and debt obligations. Money not needed for immediate business use was placed in certificates of deposit or was invested in short term obligations of various types.
[2] Receipts must be computed on the cash or accrual basis according to the method of accounting used in the computation of a taxpayer's net income for federal tax purposes. N.J.S.A. 54:10A-6(B).
[3] In this respect the instructions were as follows:

ALL OTHER BUSINESS RECEIPTS EARNED IN NEW JERSEY: Item 86.
Include among "all other business receipts" such items as interest and dividends received or payable in New Jersey. Receipts from sales of capital assets, (property not held by the taxpayer as a dealer for sale to customers in the regular course of business) are not deemed business receipts. Receipts from the sale of real property, held by the taxpayer as a dealer for sale to customers in the regular course of business, are business receipts and are allocable to New Jersey if the real property was situated in New Jersey. Receipts from sales of intangible personal property, held by the taxpayer as a dealer for sale to customers in the regular course of business, are business receipts and are allocable to New Jersey if the sales were made in New Jersey or from the regular place of business maintained by the taxpayer in New Jersey.
TOTAL RECEIPTS: Item 88
Exclude receipts from sales of capital assets (sales of property not held by the taxpayer as a dealer for sale to customers in the regular course of business). [Ibid.]
[4] Judge Crabtree defined net gains, 4 N.J. Tax at 649, n. 1, in relation to all gains and losses resulting from the sale of tangible personal property in a given year. The same treatment should apply to gains and losses from the sale of intangible property in a given year.