The SHERWIN–WILLIAMS COMPANY, an Ohio Corp., Petitioner,

v.

INDIANA DEPARTMENT OF STATE REVENUE, and Kenneth L. Miller, as Commissioner, Respondents.

No. 49T10–9412–TA–00273.

Tax Court of Indiana.

Dec. 2, 1996.

R. Robert Stommel, Lewis & Wagner, Indianapolis, Michael T. Cummins, Joseph F. Timmons, The Sherwin–Williams Co., Cleveland, OH, for Petitioner.

Pamela Carter, Attorney General, Ted J. Holaday, Deputy Attorney General, Indianapolis, for Respondents.

FISHER, Judge.

The Sherwin–Williams Company (Sherwin–Williams) appeals the final determination of the Indiana Department of State Revenue (Department) denying its claim for refund of supplemental corporate net income taxes and adjusted gross income taxes for the years 1985 and 1986.

## ISSUE

Whether the denominator of Sherwin–Williams' sales factor should be increased to include the principal or capital element of investments made outside of Indiana.

## STANDARD OF REVIEW

■ This Court reviews appeals from the Department *de novo*. *Raintree Friends Housing Inc. v. Indiana Dep't of State Revenue*, 667 N.E.2d 810, 813 (Ind. Tax Ct.1996). As such, "[i]t is bound by neither the issues nor the evidence presented at the administrative level." *Id.*

■ A motion for summary judgment will be granted only when there is no genuine issue of material fact, and a party is entitled to judgment as a matter of law. Ind.Trial Rule 56(C). "If no genuine issue of material fact exists, either the movant or the non-movant may be granted summary judgment." *Encyclopaedia Britannica, Inc. v. State Bd. of Tax Comm'rs*, 663 N.E.2d 1230, 1232 (Ind. Tax Ct.1996).

## FACTS

Sherwin–Williams is an Ohio Corporation qualified to conduct business in Indiana. Its principal business consists of manufacturing and selling paint and related products. However, as part of its normal business activities, Sherwin–Williams regularly invests its working capital in a variety of securities. The management activities related to these investments were conducted in Ohio at Sherwin–Williams' worldwide headquarters.

In the original filing of its 1985 and 1986 income tax returns, Sherwin–Williams treated the interest income generated as a result of the investment activities as non-business income and allocated it to Ohio. On October 30, 1989, the Department assessed Sherwin–Williams with additional tax and interest for the tax years 1985 and 1986 based on its determination that the interest income constituted business income subject to apportionment. Sherwin–Williams conceded that the interest income was generated as an integral part of its unitary business and thus should have been treated as business income. However, on December 20, 1989, Sherwin–Williams filed a protest claiming that the denominator of the sales factor should be increased to include the gross proceeds generated by its investment activity.

On October 11, 1990, an administrative hearing was held. The Department issued its Initial Letter of Findings on December 7, 1990. Sherwin–Williams requested a rehearing, which transpired on October 8, 1991. On January 14, 1992, the Department issued its Supplemental Letter of Findings concluding that "equitable apportionment cannot result from an inclusion of 'rolled over' securities in the sales factor." Ex. A (Supp. Letter

of Finding) The Department based its decision on IND.ADMIN.CODE tit. 45, § 3.1–1–50 (1992), which states: "In some cases, certain gross receipts should be disregarded in determining the sales factor to effectuate equitable apportionment." Sherwin–Williams again requested a rehearing, which was denied on March 6, 1992.

On March 25, 1992, Sherwin–Williams paid the tax and interest assessed for the tax year 1985 and, on April 8, 1993, paid the tax and interest assessed for the tax year 1986. On March 25, 1992, Sherwin–Williams also filed amended corporate income tax returns for 1985 and 1986. In its amended returns, Sherwin–Williams included as part of its gross receipts the gross proceeds—both interest and principal—realized from the sale of the investments financed with working capital. The gross receipts were in turn included in the denominator of the sales factor but not in the numerator since the sale of securities took place in Ohio. *See* IND.CODE ANN. § 6–3–2–2(e) (West 1989) (numerator represents the total sales in Indiana). In its amended returns, Sherwin–Williams asserted a claim for refund of the additional amounts paid pursuant to the assessment.[1] The Department did not render a determination concerning the refund claim. On December 8, 1994, Sherwin–Williams filed an original tax appeal asserting its claim for income tax refunds for the tax years 1985 and 1986. On September 6, 1995, Sherwin–Williams filed its motion for summary judgment. The parties agree that no material facts are at issue, leaving only a question of law.

## DISCUSSION and ANALYSIS

### I. Applicable Law

Indiana imposes a tax on every corporation's adjusted gross income derived from sources within Indiana. IND.CODE ANN. § 6–3–2–1(b) (West 1989). In cases where a corporation derives business income from sources both within and without Indiana, the "adjusted gross income derived from sources within the state of Indiana" is determined by an apportionment formula. IND.CODE ANN.

§ 6–3–2–2 (West 1989). Indiana has adopted a standard form apportionment method that multiplies the business income derived from sources both within and without Indiana by a fraction, the numerator of which is the property factor plus the payroll factor plus the sales factor, and the denominator of which is three. IND.CODE ANN. § 6–3–2–2(b) (West 1989). At issue in this case is the sales factor of the apportionment fraction.

"The sales factor is a fraction, the numerator of which is the total sales of the taxpayer in this state during the taxable year, and the denominator of which is the total sales of the taxpayer everywhere during the taxable year." IND.CODE ANN. § 6–3–2–2(e) (West 1989). "Sales" are defined as "all gross receipts of the taxpayer not allocated under IC 6–3–2–2(g) through IC 6–3–2–2(k)."[2] IND.CODE ANN. § 6–3–1–24 (West 1989); *see also* IND.ADMIN.CODE tit. 45, § 3.1–1–50 (1984). The regulations further define "sales" as "any business income of a corporate taxpayer ... regardless of its actual source." IND.ADMIN.CODE tit. 45, § 3.1–1–34 (1984).

### II. Analysis

The central debate in this case is how to define "gross receipts" for the purpose of the denominator of the sales factor. The Department considers only the interest earned on the investment securities to be gross receipts. Sherwin–Williams, on the other hand, argues that gross receipts equals the amount received on the sale, which includes both the interest earned and the principal. The Department responds that inclusion of principal in the denominator distorts the apportionment formula by giving extra weight to out-of-state sales. There is a great potential for abuse, argues the Department, because Sherwin–Williams could use the same principal many times as it re-invests in short-term securities, rolling over the principal of the previously sold investment.

The Court finds no Indiana case law addressing this issue but finds the following

---

1. The amounts Sherwin–Williams requested were $13,702 for 1985 and $18,045 for 1986.

2. Sections 6–3–2–2(g)–(k) deal with rents and royalties, capital gains and losses, interest, dividends, and patent or copyright royalties.

case from the New Jersey Tax Court instructive. In *AT & T v. Director, Division of Taxation*, a cash management pool was maintained at AT & T's general headquarters in New York for the purpose of investing excess cash in short-term securities. 4 N.J.Tax 638, 645 (N.J. Tax Ct.1982). AT & T included in the denominator of its receipts fraction[3] the full amount realized upon the sale or redemption of short-term investments. *Id.* at 646, 650. The director contended that only interest earned on investment paper should be included in the denominator of the receipts fraction. *Id.* at 646. The Tax Court agreed with the director, holding that "only the income, including realized appreciation, derived from the sale or redemption of short-term obligations is includible in the receipts fraction as business receipts." *Id.* at 650. The court noted the potential for abuse if principal were included in the denominator for "the same funds [could be included] several times over, to the obvious detriment of all nondomiciliary states in which [AT & T] does business." *Id.* at 650–51.

The Superior Court of New Jersey, Appellate Division, affirmed the tax court, ruling that gross revenues from the sale or maturity of investment papers are to be excluded from the apportionment fraction. *AT & T v. Director, Division of Taxation*, 194 N.J.Super. 168, 476 A.2d 800, 802 (A.D.1984), *cert. denied*, 97 N.J. 627, 483 A.2d 157 (1984). Thus, the principal included in the proceeds of sale or redemption of short-term investments is not includible in the receipts fraction. *Id.* The Appellate Division adopted the tax court's reasoning, stating:

As Judge Crabtree observed, idle cash can be turned over repeatedly by investment in short term securities. It is no true reflection of the scope of AT & T's business done within and without New Jersey to allocate to the numerator or the denominator of the receipts fraction the full amount of money returned to AT & T upon the sale or redemption of investment paper. To include such receipts in the fraction would be comparable to measuring business activity by the amount of money that a taxpayer repeatedly deposited and withdrew from its own bank account. The bulk of funds flowing back to AT & T from investment paper was simply its own money.

*Id.* 476 A.2d at 802. The Court found that despite the other possible justifications for its ruling "it is sufficient to say that to [hold] otherwise produces an absurd interpretation of [the relevant statute]." *Id.* The Court further found that in adopting the tax court's ruling it was unnecessary to consider the director's alternate contention that the director has the power to exclude revenues from investment securities if their inclusion would distort the business allocation factor. *Id.*

This Court is also persuaded by the Indiana Supreme Court's analysis of a similar issue in *Department of Treasury v. Muessel*, 218 Ind. 250, 32 N.E.2d 596 (1941). In that case, a holding company that had previously accepted the stock of two companies in exchange for the issuance of stock in the holding company was dissolved, and the stock of each company was returned to its original owners. The question presented was whether such a redistribution constituted taxable income as "receipts by reason of investment of capital" under the Gross Income Tax Act of 1933. *Id.* at 253, 32 N.E.2d at 597. The statute at issue read: "[A]ll receipts by reason of the investment of capital, including interest, discount, rentals, royalties, fees, commissions or other emoluments, however designated." *Id.* at 255, 32 N.E.2d at 598. The Court reasoned that the use of "including" was intended as a limitation designating the types of receipts from the investment of capital that should be taxed. The Court read "including" to mean "such as," finding the listed receipts of "interest, discount, rentals, royalties, fees, commissions or other emoluments" to be profits and earnings. Therefore, the Court held that only profits or earnings, and not the return of invested capital, were to be taxed

---

3. New Jersey's "receipt factor" is the equivalent of Indiana's "sales factor" in the context of apportionment.

as gross income.[4] *Id.* at 256–58, 32 N.E.2d at 598–99.

■ For the foregoing reasons, this Court holds that "gross receipts" for the purpose of the sales factor includes only the interest income, and not the rolled over capital or return of principal, realized from the sale of investment securities. Thus, the Department was correct in including only the interest earned as part of the total receipts in the denominator of the sales factor of the apportionment formula. The Court finds that the Department followed the standard apportionment formula.[5] This holding makes it unnecessary for the Court to consider whether the relief provision of IND.CODE ANN. § 6–3–2–2(*l*) (West 1989) applies in this case. *See AT & T,* 476 A.2d at 802.

**4.** This decision overturned the high court's 1938 opinion *Department of Treasury v. Crowder,* 214 Ind. 252, 15 N.E.2d 89 (1938) which said return of invested capital by a final distribution of net assets was taxable as a "receipt by reason of the investment of capital." *Muessel,* 218 Ind. at 255, 32 N.E.2d at 597–98.

## CONCLUSION

Since the Indiana apportionment calculation for Sherwin–Williams includes only the interest earned from the securities investments in the denominator of the sales factor of the apportionment formula, the Department's final determination is hereby AFFIRMED for the reasons stated in this opinion. Sherwin–Williams motion for Summary Judgment is hereby DENIED and Summary Judgment is GRANTED in favor of the Department.

**5.** Given this analysis, this Court need not determine whether Sherwin–Williams' claim was barred by the statute of limitations.