THE SHERWIN-WILLIAMS COMPANY,      )
                                   )
    Plaintiff/Appellant,           )
                                   )
v.                                 )
                                   )
RUTH E. JOHNSON, Commissioner of   )
Revenue, State of Tennessee,       )
                                   )
    Defendant/Appellee.            )

**F I L E D**

October 21, 1998

**Cecil W. Crowson**
**Appellate Court Clerk**

Appeal No.
01-A-01-9712-CH-00651

Davidson Chancery
No. 93-2739-I

# COURT OF APPEALS OF TENNESSEE

## APPEAL FROM THE DAVIDSON COUNTY CHANCERY COURT

## AT NASHVILLE, TENNESSEE

## THE HONORABLE IRVIN H. KILCREASE, JR., CHANCELLOR

MICHAEL D. SONTAG
BRYAN W. METCALF
Bass, Berry & Sims
2700 First American Center
Nashville, Tennessee 37238-2700

MICHAEL T. CUMMINS
JOSEPH F. TIMMONS
The Sherwin Williams Co.
101 Prospect Avenue, N.W.
Cleveland, Ohio 44115
    ATTORNEYS FOR PLAINTIFF/APPELLANT

JOHN KNOX WALKUP
Attorney General and Reporter

JOE C. PEEL
Cordell Hull Building, Second Floor
425 Fifth Avenue North
Nashville, Tennessee 37243-0489
    ATTORNEYS FOR DEFENDANT/APPELLEE

AFFIRMED AND REMANDED

WILLIAM B. CAIN, JUDGE

# O P I N I O N

Plaintiff Sherwin-Williams Company filed suit pursuant to Tennessee Code Annotated section 67-1-1802 seeking a refund of corporate excise taxes with respect to tax years 1987, 1988, 1989 and 1990. The appeal presents three questions, to-wit:

1. Is return of capital from cash investments includable in the denominator under T.C.A. 67-4-811(g)(1)?

2. If the answer to question 1 is affirmative, did the commissioner properly exercise his discretion under T.C.A. 67-4-812(a) in varying the statutory formula?

3. Is Sherwin-Williams' refund claim for the year 1987 barred by the statute of limitations?

Tennessee adopted the Uniform Division of Income for Tax Purposes Act (UDITPA) in 1976 and it is codified in Tennessee Code Annotated section 67-4-801 et seq.

There is little factual dispute between the parties and the problem in question number one is best stated in the brief of the appellee.

> The central issue in this case involves the determination of the proper calculation of the denominator of the sales factor in the statutory apportionment formula. The Tennessee Excise Tax law in effect in 1987 through 1990 required the Plaintiff to pay an excise tax equal to six percent (6%) of its "net earnings" as defined in T.C.A. § 67-4-805. Corporations doing business both within and without Tennessee are permitted to allocate and apportion their taxable income under the provisions found in T.C.A. §§ 67-4-809 through 67-4-816. These apportionment provisions were adopted by the Tennessee General Assembly in 1976 in Chapter 537, Public Acts of 1976 which was based upon the Uniform Division of Income for Tax Purposes Act (UDITPA). Since Sherwin Williams was engaged in business both within and without the State of Tennessee during the years in question, it was required by T.C.A. § 67-4-809 to apportion its business earnings in accordance with the apportionment formula found in T.C.A. § 67-4-811.

> T.C.A. § 67-4-811 defines the standard apportionment formula as a fraction, the numerator of which is the sum of the property, payroll and sales factors of each taxpayer as defined in the statute and the denominator is three (3). The statute defines each factor as a fraction in which the numerator is the taxpayer's respective property, payroll or sales values in Tennessee and the denominator is the taxpayer's respective property, payroll or sales values in all jurisdictions.

> The provisions of T.C.A. § 67-4-811 read in pertinent part are as follows:

(a)    All business earnings shall be apportioned to this state by multiplying the earnings by a fraction, the numerator of which is the property factor plus the payroll factor plus the sales factor, and the denominator of which is three (3); . . .

(b)(1)  The property factor is a fraction, the numerator of which is the average value of the taxpayer's real and tangible and personal property owned or rented and used in this state during the tax period and the denominator of which is the average value of all the taxpayer's real and tangible property.

* * *

(e)(1)  The payroll factor is a fraction, the numerator of which is the total amount paid in this state during the tax period by the taxpayer for compensation, and the denominator of which is the total compensation paid everywhere during the tax period.

* * *

(g)(1)  The sales factor is a fraction, the numerator of which is the total sales of the taxpayer in this state during the tax period, and the denominator of which is the total sales of the taxpayer everywhere during the tax period.

T.C.A. § 67-4-80[4](a)(12) defines "sales" as follows:

"Sales" means all gross receipts of the taxpayer not allocated under this chapter.

In the present case, the Plaintiff derived income from the short-term investment of its excess working capital. These transactions were handled in the Plaintiff's Cleveland office by its treasury department personnel. On a daily basis, the treasury personnel consolidated the bank accounts of the Plaintiff's various locations in the states where Sherwin-Williams conducts its business operations. The treasury personnel determined the cash position of the Plaintiff and its future funding needs. Any excess cash was invested in short-term interest bearing securities with various maturities. ... For example, Sherwin-Williams wire transferred $11,000,000 for a one day deposit to the Signet Bank on January 3, 1990. ... The next day, January 4, 1990, Signet Bank wire transferred the principal amount of $11,000,000 back to Sherwin-Williams plus interest in the amount of $2,539.93. Generally, all working capital transactions involve investments in which Sherwin-Williams makes an investment of funds in short-term interest bearing securities. Sherwin-Williams will usually hold the securities to maturity but if necessary to meet cash requirement, Sherwin-Williams may sell such securities.

In this case, the parties are agreed that the interest income and any gains(losses) should be included in the denominator of the sales factor. Sherwin-Williams contends, however, that the principal amounts of the working capital invested which are returned to Sherwin-Williams when the securities mature and are redeemed or sold are also required to be included in the denominator of the sales factor. The Plaintiff contends that the term "total sales" in the denominator of the sales factor of the statutory apportionment formula requires the inclusion of not only the interest income and any gains from the working capital transactions but also the amounts of the returned principal from the working capital investment operations. The Commissioner determined that only the total income [interest income and any gains(losses)]

from the working capital investments should be included in the computation of the denominator of the sales factor and not the returned amounts of principal invested in the working capital investments. Thus, the key question is whether the returned principal amounts are properly included in "total sales everywhere" under the proper application of the above referenced statutes.

The position of Sherwin-Williams is that Tennessee Code Annotated section 67-4-804(a)(12) means literally what it says when calculating " . . . total sales of the taxpayer everywhere . . . " per Tennessee Code Annotated section 67-4-811(g)(1). The former section reads: "Sales - All gross receipts of the taxpayer not allocated under this chapter." Tenn. Code Ann. § 67-4-804(a)(12)(1997). (This subsection has been recodified as Tenn. Code Ann. § 67-4-804(a)(15) (1998)).

Sherwin-Williams articulates its position on this issue in its reply brief with clarity:

> The statute clearly contemplates the inclusion in the sales factor of gross receipts from the sale of intangible property as well as from the sale of tangible property. In fact, the statute details a specific method of determining whether "sales, other than sales of tangible personal property" occur in the State of Tennessee. See Tenn. Code Ann. § 67-4-811(I) (providing, generally, that if the majority of the "earnings producing activities" with respect to the sale of intangibles occur in Tennessee, then the sale is deemed to occur in Tennessee).
>
> Rather than including the gross receipts from the sale of these investments in the denominator of the sales factor, the Commissioner included only the interest income and net gain (loss) from the Ohio Transactions investments in the denominator when she recomputed the amount of Sherwin-William's income apportioned to Tennessee. This interpretation of Tenn. Code Ann. § 67-4-811(g)(1) (describing the sales factor) and 67-4-804(a)(12) (defining "sales" as meaning all gross receipts of the taxpayer not allocated under the excise tax law) cannot be reconciled with the plain language of those sections. Courts are required to give effect to the intention or purpose of the legislature as expressed in a statute, and the "legislative intent or purpose is to be ascertained primarily from the natural and ordinary meaning of the language used, when read in context with the entire statute, without any forced or subtle construction to limit or extend the import of the language." Worrall v. Kroger Co., 545 S.W.2d 736, 738 (Tenn. 1977).
>
> The natural and ordinary meaning of Tenn. Code Ann. § 67-4-811(g)(1) requires that the total sales of the taxpayer everywhere during the tax period be included in the denominator of the sales factor. Tenn. Code Ann. § 67-4-804(a)(12) defines the term "sales" to include all gross receipts of the taxpayer not otherwise allocated under the Excise Tax Law. The natural and ordinary meaning of the term "gross receipts" mandates that the total or gross proceeds from the Ohio Transactions (that is; the income and the return of principal/capital) be included in the sales factor. Certainly the term "gross receipts" cannot be construed to include only the net income and net gain derived from the sale of short-term investments. In fact, Sherwin-Williams respectfully submits that the terms "gross" and "net" are mutually exclusive:

4

Webster's Third New International Dictionary defines the term "gross" as "consisting of an overall total exclusive of deductions (~earnings)(~production)(~annual profit) -- opposed to net." (emphasis added). The statute is not ambiguous and leaves no basis for which the Commissioner may contend that the natural and ordinary meaning of "gross receipts" as used in the sales factor should somehow be ignored.

The efforts by taxpayers to include return of working capital invested in the denominator of the sales factor is not new to states operating under the Uniform Division of Income for Tax Purposes Act or under comparable legislative enactments. The result in each instance is a hyper-inflated sales factor.

In *American Telephone and Telegraph Co. v. Director, Division of Taxation*, 476 A.2d 800 (N.J. 1984) the taxpayer included in its 1972 corporation business tax returns total receipts in the denominator of eight billion seven hundred ninety-six million nine hundred sixty-one thousand one hundred fifty-seven dollars. Of this amount, proceeds received from the sale or redemption of investment paper total six billion eight hundred fifteen million seven hundred ninety-two thousand three hundred three dollars, of which more than five billion eight hundred million dollars represented money flowing back to AT&T from certificates of deposit, commercial paper, and bankers' acceptances. During this same year, 1972, the total aggregate receipts from AT&T's business of rendering telecommunications service nationally and internationally was approximately one billion nine hundred million dollars.

Applying the New Jersey statute the court held:

[1] We uphold as a general matter the exclusion of gross revenues received by plaintiff from the sale or maturity of investment paper. As Judge Crabtree observed, idle cash can be turned over repeatedly by investment in short term securities. It is no true reflection of the scope of AT & T's business done within and without New Jersey to allocate to the numerator or the denominator of the receipts fraction the full amount of money returned to AT & T upon the sale or redemption of investment paper. To include such receipts in the fraction would be comparable to measuring business activity by the amount of money that a taxpayer repeatedly deposited and withdrew from its own bank account. The bulk of funds flowing back to AT & T from investment paper was simply its own money. Whatever other justification there is for excluding such revenues from the receipts fraction, it is sufficient to say that to do otherwise produces an absurd interpretation of § 6(B). "It is axiomatic that a statute will not be construed to lead to absurd results. All rules of construction are subordinate to that obvious proposition. [Even the rule of strict construction] does not mean

that a ridiculous result shall be reached because some ingenious path may be found to that end." State v. Provenzano, 34 N.J. 318, 322, 169 A.2d 135 (1961).

*American Telephone and Telegraph Co. v. Director Division of Taxation*, 476 A.2d 800, 802 (N.J. 1984).

In 1996, the Indiana tax court dealt with a statute almost identical to that of Tennessee wherein Sherwin-Williams sought to include return of principal in the denominator of the sales factor where "sales" was defined as " . . . all gross receipts of the taxpayer not allocated under i.c. 6-3-2-2(g) through 1c6-3-2-2(k)."

The court observed:

> The central debate in this case is how to define "gross receipts" for the purpose of the denominator of the sales factor. The Department considers only the interest earned on the investment securities to be gross receipts. Sherwin-Williams, on the other hand, argues that gross receipts equals the amount received on the sale, which includes both the interest earned and the principal. The Department responds that inclusion of principal in the denominator distorts the apportionment formula by giving extra weight to out-of-state sales. There is a great potential for abuse, argues the Department, because Sherwin-Williams could use the same principal many times as it re-invests in short-term securities, rolling [*7] over the principal of the previously sold investment.

*The Sherwin-Williams Co. v. Indiana Dep't of State Revenue*, 673 N.E.2d 849, 851 (Ind. Tax Ct. 1996).

Relying on *AT&T v. Director*, 476 A.2d 800 (N.J. 1984), the Indiana court held that "gross receipts" did not include return of principal.

Turning now to the effect in Tennessee of including return of principal in the "sales factor", one must remember that the principal business of Sherwin-Williams nationwide is the manufacture and sale of paint and related products. Nationwide gross receipts from these operations for each of the years in issue are as follows:

1987  $1,751,029,652

1988  $1,908,933,782

1989  $2,016,485,025

1990  $2,190,709,853

6

During those same years, return of principal was:

1987 $2,008,053,464

1988 $1,595,783,455

1989 $3,320,585,868

1990 $3,098,033,766

If the gross receipts from manufacturing and sale of paint and related products are then combined with return of principal amounts in determining the denominator in the "sales factor", an average of 55.169% of the combined total for each year would be return of principal.

Thus, the same absurdity existing in New Jersey and Indiana would exist in Tennessee.

Following the lead of New Jersey and Indiana, the chancellor held:

This court finds that to include return of principal in the sales factor denominator would distort the extent of Sherwin-Williams' business activities in Tennessee and other states in which it does business and defeat the intent and purpose of the statute (T.C.A. 67-4-811). Accordingly, the court finds that the amount of return of principal to Sherwin-Williams on the sale or redemption of interest bearing securities related to its, working capital investments should not be included in the denominator of the sales factor. [sic]

This holding by the chancellor is logical and appealing, particularly since; "It is presumed that the legislature enacting a statute did not intend an absurdity, and such a result will be avoided by this court if the terms of the statute admit of it by reasonable construction." *Epstein v. State*, 211 Tenn. 633, 366 S.W.2d 914 (1963); *Loftin v. Langsdon*, 813 S.W.2d 475, 480 (Tenn. App. 1991).

This sound rule, however, is met by the equally well settled rule that: "If the words of a statute plainly mean one thing they cannot be given another meaning by judicial construction." *Henry v. White*, 194 Tenn. 192, 198, 250 S.W.2d 70, 72 (1952).

In construing the term "gross receipts" under Tennessee Code Annotated section 67-4-301, the Supreme Court of Tennessee observed: "We do not believe that the definition of 'gross receipts' under T.C.A. 67-4-301 is ambiguous so as

7

to require resort to rules dealing with the construction of unclear statutes." ***South Central Bell Tele. Co. v. Olson***, 669 S.W.2d 650, 652 (Tenn. 1984).

With deference to sister jurisdictions, this court is reluctant to apply the same "absurd result standard". An absurd result is not necessary for, in spite of the plain language of Tennessee Code Annotated section 67-4-811(g)(1), the commissioner may opt for a different scheme of assessment whenever the resulting apportionment does not fairly represent the taxpayer's business in this state. The very absurdity of the result sought by Sherwin-Williams, lays a sound basis for the implementation of Tennessee Code Annotated section 67-4-812(a). The trial court found that applying the statutory scheme would "distort the extent of Sherwin-Williams' business in Tennessee . . . ," and applied the alternative method.

The alternative statute is clear upon its face:

> (a) If the allocation and apportionment provisions of this part do not fairly represent the extent of the taxpayer's business activity in this state, the taxpayer may petition for <u>or the commissioner may require</u>, in respect to all or any part of the taxpayer's business activity, if reasonable:
>
> . . .
>
> (4) The employment of any other method to effectuate an equitable allocation and apportionment of the taxpayer's earnings. Tenn. Code Ann. § 67-4-812(a)(4) (1994).*emphasis added*

The real question to be answered is whether, as a matter of law, the variation in this case amounts to an abuse of discretion. Using the terminology of the statute, the commissioner has abused his discretion where the alternative computation reaches an inequitable result as to the apportionment.

In utilizing the variation, the Commissioner found, as did the Chancellor, that by including the gross receipts from the sales of short term securities, Sherwin-Williams did not fairly and accurately represent the total amount of property, payroll and sales subject to state taxation (the denominator), and therefore did not fairly represent the amount of property subject to taxation in this state, (the ratio constructed using the above denominator).

Sherwin-Williams argues that absent a "grossly disproportionate" ratio as described by this court in *AT&T v. Huddleston*, 880 S.W.2d 682 at 692 (Tenn.Ct. App. 1994), the alternative statute, Tennessee Code Anotated section 67-4-812 (a)(4), cannot be used. Both parties as well as the trial court have acknowledged that the situation at bar represents a case of first impression insofar as it concerns a Commissioner who seeks a variance rather than a taxpayer. The two Tennessee cases that come closest to addressing this situation, *AT&T v. Huddleston,* 880 S.W.2d 682 (Tenn. Ct. App. 1994) and *Peterson Mfg. Co. v. State*, 779 S.W.2d 784 (Tenn. 1989), concern taxpayers seeking a variance.

There is, however, much guidance to be drawn from these authoritative sources. Contrary to Sherwin-Williams assertion in its brief, this court in *AT&T* found that:

> States are given wide latitude under the Federal Constitution to adopt various methods for attributing earnings to a taxing state. *See Moorman Mfg. Co. v. Bair,* 437 U.S. 267, 279, 98 S.Ct. 2340, 2347-48, 57 L.Ed.2d 197, 208 (1978). "[T]he Constitution imposes no single formula on the States..." Container Corp., 463 U.S. at 164, 103 S.Ct. at 2939, 77 L.Ed.2d at 552.

*AT&T v. Huddleston*, 880 S.W.2d 682, 689 (Tenn.Ct.App. 1994).

Indeed the court in *AT&T* cited *Peterson* for the proposition that the burden is on a taxpayer to establish that "its own unique facts and circumstances justify a departure from the standard apportionment formula." *AT&T v. Huddleston*, 880 S.W.2d 682 at 691. It can well be said that under the above authorities the statutory apportionment scheme is presumptively correct. However what can a state do when faced with a statutory scheme which does not fairly represent the taxpayer's income attributable to that state? The three factor apportionment formula applied is clearly set out in Tennessee's version of the Uniform Distribution of Income for Tax Purposes Act (UDITPA). The goal of the UDITPA is not pinpoint mathematical accuracy but fair apportionment. *See* Tenn. Code Ann. § 67-4-804(b) (1998). The discretion accorded the Commissioner as well as the bilateral ability to request a variance evidence this goal. *See* Tenn. Code Ann. § 67-4-812 (1998). It is clear from the record before this court that the Commissioner acted well within his discretion. At this point,

this court must examine the nature of the transactions which the taxpayer claimed were "sales" below. The court's attention is drawn specifically to the following series of transactions:

| DESCRIPTION | DATE ACQUIRED | DATE SOLD | GROSS SALES PRICE | COST OR OTHER BASIS | GAIN OR LOSS |
|---|---|---|---|---|---|
| FNC ETD MATURITY | 1/3/90 | 1/4/90 | $10,002,309.03 | $10,000,000.00 | $2,309.03 |
| AMERITRUST ETD MATURITY | 1/3/90 | 1/4/90 | $5,501,260.42 | $5,500,000.00 | $1,260.42 |
| CONTINETNAL ETD MATURITY [1] | 1/4/90 | 1/5/90 | $10,042,500.00 | $10,000,000.00 | $42,500.00 |

In essence, the Commissioner found, as this court does, a very high probability that the same investment basis may be used in these admittedly efficient short-term purchases and sales to barely increase the company's overall net worth, while profoundly increasing the out-of-state portion of their "gross receipts" for UDITPA purposes. In such a situation, the above transactions do not fairly represent the taxpayer's income connection to Ohio. The resulting transactions do not amount to $35,046,069.45 of taxable income in that state. Consider the logical result, if these transactions had Tennessee as their situs. If the Commissioner were to apply the statutory scheme, then the taxpayer would be on the steps of the courthouse claiming an abuse of discretion. Under the authorities cited above this court would be bound to assess the Commissioner's actions with regard to whether such an arrangement fairly represented the company's business in this state. It strains the bounds of good sense to assert that the taxpayer is attempting to fairly and completely represent his business connection to this state, when, as fortune would have it, Ohio statutes do not require inclusion of the "gross receipts" in it's receipt factor. The action of the chancellor in applying the alternative provisions of Tennessee Code Annotated section 67-4-812(a)(4) is affirmed.

In view of this court's affirmation of the Chancery Court's ruling regarding the Commissioner's use of an alternate scheme, the issue regarding the

---

[1] These items appear in Exhibit 8 to the Record on Appeal and represent only a portion of "The Sherwin-Williams Company Business Receipts Generated By Investment Transactions 12/31/90."

limitation of an action for refund for 1987 is moot. However, this court agrees with the chancellor that Appellant's refund claim for 1987 taxes paid was barred by the Refund Statute, Tenn. Code Ann. § 67-1-1802. The statute is clear upon its face. The claim for refund was filed well after the statutory period had run.

Under the authorities cited herein, and upon the record, the judgment of the Chancellor is affirmed. Costs on appeal are taxed against the appellant. The cause is remanded for such further proceedings as are deemed necessary.

_____
WILLIAM B. CAIN, JUDGE


CONCUR:


_____
BEN H. CANTRELL, PRESIDING JUDGE, M.S.


_____
WILLIAM C. KOCH, JR., JUDGE