708 P.2d 778

**The STATE of Arizona, Appellant,**

v.

**Edgar Baldwin HEYLMUN, Appellee.**

**No. 2 CA–CR 3352.**

Court of Appeals of Arizona,
Division 2, Department A.

Aug. 29, 1985.

Reconsideration Denied Oct. 23, 1985.

Stephen D. Neely, Pima Co. Atty. by David R. Ramage-White, Tucson, for appellant.

Hirsh & Fines, P.C. by L. Anthony Fines, Tucson, for appellee.

## OPINION

FERNANDEZ, Judge.

On September 6, 1982, a search warrant was issued and subsequently executed at appellee's residence. Various items were seized, including letters, sexually explicit photographs depicting children, negatives, books, typewriters and cameras. Appellee was later indicted on 11 counts—three counts of sexual abuse, four counts of sexual exploitation of a minor, two counts of child molestation, one count of commercial sexual exploitation of a minor and one count of furnishing obscene or harmful items to minors.

The affidavit in support of the search warrant reads as follows:

"THAT YOUR AFFIANT Det. O'Crotty is assigned to the sexual exploitation of children unit of the Tuc. Police Dept. and has been a police officer for 9½ yrs.

"On Sept 3, 82 I recieved [sic] an envelope from Det. George B. Callow of the Riverside Police Dept. 4102 Orange St, Riverside Calif. Enclosed were 28 copies of typed letters that Det. Callow had seized on a search warrant that was served Aug. 23, 82 on Brent Stanley at 3851 Dawes St. Riverside, CA. The warrant was issued by Judge Howard M. Dabney Riverside County, CA.

"The above 28 letters were dated from March 82 through Aug 82. They were sent to Brent Stanley from Ed Heylmun of 3660 E. 3rd St # B-3 Tucson, AZ. These letters were reviewed by your affiant and were found to contain extensive and specific discussion of the subject of child molesting. Numerous written references were made concerning the exchange of photographs and relating of experiences the two correspondants [sic] have had in the area of child molesting. Ed Heylmun describes himself as 'a professional child molester [sic].'

"Det. Callow was contacted by me on Sept. 3, 82 to obtain further details to be used for this affidavit. Det. Callow told me that Brent Stanley was, subsequent to their search warrant, arrested on several charges relating to child molesting and distribution of child pornography. He requested that this dept. attempt to recover any child pornography and written material sent by Brent Stanley or P.O. Boxes 2093, 7355 of Riverside CA. to Ed Heylmun of Tucson, AZ.

"Your affiant has been investigating numerous pedophile cases and also has studied this subject. It is very common for pedophiles to hoard photographs and materials pertaining to their particular deviant behavior.

"Edgar Heylmun is still living at 3660 E. 3rd # B-3 as of Sept 6, 82. This was verified this date by a phone call to the apartment manager."

In March 1983 appellee moved to suppress the items seized in the search, and the trial court granted the motion in November 1983, stating in his order as follows:

"The Court Finds that there are insufficient facts within the four corners of the affidavit to establish probable cause that an offense had been committed in Arizona or that evidence of such an offense would be found in Heylmun's apartment.

"Since A.R.S. § 13–3912 limits search warrants in Arizona to items constituting evidence of a 'public offense', which is defined in A.R.S. § 13–105(18) as one 'for which a sentence to a term of imprisonment or of a fine is provided by any *law of this state*', it is no support for the warrant that there might have been evidence in the residence of an offense committed in California by Brent Stanley." (Emphasis in original.)

The state has appealed from that ruling, contending that Arizona courts have jurisdiction to issue search warrants for evidence of crimes committed in other jurisdictions. We find that the court had jurisdiction to issue the warrant and reverse.

The applicable ground for issuance of the search warrant in this case is A.R.S. § 13–3912 which reads as follows:

"A search warrant may be issued upon any of the following grounds:

. . . .

"4. When property or things to be seized consist of any item or constitute any evidence which tends to show that a particular public offense has been committed, or tends to show that a particular person has committed the public offense."

A search warrant is defined in A.R.S. § 13–3911 as "an order in writing issued in the name of the state of Arizona, signed by a magistrate, directed to a peace officer, commanding him to search for personal property, persons or items described in § 13–3912." Nothing in either that definition nor in any of the other provisions relating to search warrants, A.R.S. §§ 13–3911 through 13–3925, indicates in any way that jurisdiction to search is limited to crimes committed in Arizona. The basis for the trial court's ruling is the definition of "offense" in A.R.S. § 13–105(18) which refers to conduct punishable by fine or imprisonment as "provided by any law of this state...." Not only does § 13–105 expressly state that its definitions are to apply "unless the context otherwise requires ...", meaning they are not to be applied mechanistically and rigidly, but also the language of the definition itself does not necessarily limit a magistrate's jurisdiction to issue search warrants to evidence of crimes committed in Arizona.

The definition refers to conduct punishable as provided by state law. That can be read either as restricting jurisdiction to evidence of conduct occurring in Arizona which can be prosecuted under a specific Arizona statute or as permitting searches for evidence of conduct which, if it occurred in Arizona, would be subject to prosecution here. "The cardinal principle of statutory interpretation is that the intent of the legislature is to be ascertained and followed. The second, at least in Arizona, is that statutes shall be liberally construed to effect their objects and to promote justice...." *Mendelsohn v. Superior Court*, 76 Ariz. 163 at 169, 261 P.2d 983 at 987 (1953); see also A.R.S. § 13–104. "In construing the language in a statute, the rules of construction require that a court examine the context, subject matter, effects, consequences and the spirit and reason of the law." *State v. Armendariz*, 127 Ariz. 422 at 426, 621 P.2d 928 at 932 (App.1980).

An examination of the various grounds upon which a search warrant may issue indicates the legislature intended a whole range of personal property to be subject to seizure upon a proper showing of probable cause. Included, in addition to that set out in § 13–3912(4) above, is property that was stolen or embezzled, used to commit an offense or delivered to another for purposes of concealment. Under the trial court's interpretation of the statute, a person could commit an offense such as murder and simply move to Arizona for other than the purpose of avoiding prosecution, bringing with him all personal property related to the crime. If he remained here peacefully neither jurisdiction could issue a warrant to seize the evidence of the crime. It does not appear the legislature intended such a result. The sensible construction of the statute, *Mendelsohn v. Superior Court*, supra, is that a search warrant may issue to seize property located in Arizona if it constitutes evidence of a crime that would be punishable under Arizona statutes if it were committed here.[1]

That construction is also consistent with other jurisdictions that have confronted the same issue. In *State v. Intercontinental, Ltd.*, 302 Md. 132, 486 A.2d 174 (1985), the Maryland Court of Appeals upheld a search for evidence of crimes allegedly committed solely in New Jersey. Applying similar rules of statutory construction, the court

---

1. We also note the definition of "offense" in § 13–105(18) was adopted as part of the revised criminal code in 1978, but the search warrant statutes antedate that code. The only change made in those statutes in connection with the code revision was to renumber them so that all criminal statutes would be found together. Hence, a definition first utilized in the revised criminal code cannot limit the jurisdiction of the previously-existing search warrant provisions.

determined that · the phrase "under the criminal laws of this State," 302 Md. at 135, 486 A.2d at 175, modified the word "property" so that it did not restrict search warrant jurisdiction; otherwise a sanctuary would be provided within the state for evidence of crimes committed elsewhere. See also *Hughes v. United States*, 429 A.2d 1339 at 1341 (D.C.App.1981) (District of Columbia search for evidence of Maryland crime upheld on the basis that "the statute is broad enough to encompass the ruling of the trial court....").

In the course of its opinion in *Intercontinental*, the Maryland court observed that only three states' statutes specifically permit searches for items related to offenses committed in another state. Of the other 47, only one appears to restrict its jurisdiction to evidence of crimes committed only in that state, and that restriction is by way of dictum. See *State v. Kelly*, 668 P.2d 1032 (Mont.1983). Montana's statute, however, is different from Arizona's. Mont. Code Ann. § 46–1–201(7) (1983) provides that " '[o]ffense' means a violation of any penal statute of this state ...," thus apparently requiring conduct expressly prohibited in that state to support an affidavit for a search warrant. Arizona's statute is not similarly restricted.

Appellee contends additional support for his position is found in A.R.S. § 13–108 in which the type of conduct which confers jurisdiction upon Arizona courts to prosecute crimes is enumerated. All the types listed require that some element of the conduct occur in Arizona. That requirement, however, is irrelevant in this case. The crimes for which appellee has been indicted involve conduct which occurred in Arizona. Those crimes are not at issue in this appeal. What is involved here is a search warrant, not a prosecution. "[T]he procuring of a search warrant ... is not, in any sense, the commencement of a prosecution. Such proceedings are merely inquisitorial in their nature, and may or may not result in a criminal prosecution, and are at best merely ancillary to a prosecution, if one takes place." *Bevington v. United States*, 35 F.2d 584 at 584 (8th Cir.1929).

"[P]roceedings relating to the issuance of a search warrant do not involve any determination of guilt or innocence...." *State v. Reed*, 120 Ariz. 58 at 61, 583 P.2d 1378 at 1381 (App.1978). Since the issuance of a search warrant does not commence a prosecution, the prosecutorial jurisdiction of state courts is not applicable to the issues involved here.

Having determined that the magistrate had jurisdiction to issue the search warrant, we reverse the trial court's ruling on the motion to suppress and remand for further proceedings consistent with this opinion.

BIRDSALL, P.J., and HOWARD, J., concur.