97 P.3d 896

WALGREEN ARIZONA DRUG COM-
PANY, an Arizona corporation,
Plaintiff–Appellant,

v.

ARIZONA DEPARTMENT OF REV-
ENUE, an agency of the State of
Arizona, Defendant–Appellee.

No. 1 CA–TX 03–0009.

Court of Appeals of Arizona,
Division 1, Department T.

Sept. 23, 2004.

Snell & Wilmer, L.L.P. by Charles A. Pu-
laski, Jr., Barbara J. Dawson, Phoenix, At-
torneys for Plaintiff–Appellant.

Terry Goddard, Attorney General by Eliz-
abeth S. Hill, Assistant Attorney General,
Phoenix, Attorneys for Defendant–Appellee.

## OPINION

HALL, Judge.

¶ 1 Walgreen Arizona Drug Company
(Taxpayer) appeals a summary judgment
holding that a return of investment principal
is not includable as part of its total sales for

purposes of the Arizona corporate income tax. We affirm the tax court's decision.

## BACKGROUND

¶ 2 Taxpayer operates retail drugstores as its primary business. As of 1995, Taxpayer's parent company, Walgreen Company (Walgreen Co.), operated 2085 stores nationwide, with 120 in Arizona. The stores sell prescription drugs and other merchandise. Taxpayer and Walgreen Co. filed their Arizona income taxes on a combined basis.

¶ 3 Walgreen Co., headquartered in Deerfield, Illinois, earns interest on short-term investments,[1] and typically reinvests the proceeds in similar interest-bearing instruments. This is a treasury function designed to maintain cash needed to operate the business on a daily basis.

¶ 4 Taxpayer amended its Arizona corporate income tax returns for fiscal years ending August 31, 1988 through August 31, 1995. It included the return of principal in the denominator of the corporate income tax formula, which would lead to a smaller amount of taxable income attributed to Arizona. Accordingly, Taxpayer requested refunds totaling more than 1.3 million dollars, excluding interest.

¶ 5 The Arizona Department of Revenue (ADOR) denied the refund requests. Taxpayer filed a complaint, and ADOR answered. Following briefing and oral argument on cross-motions for summary judgment, the tax court ruled in favor of ADOR. This appeal followed, and we have jurisdiction pursuant to Arizona Revised Statutes (A.R.S.) section 12–2101(B) (2003).

## DISCUSSION

¶ 6 We review the tax court's summary judgment de novo. *Citizens Telecommunications Co. of White Mountains v. Ariz. Dep't of Revenue,* 206 Ariz. 33, 38, ¶ 20,

1. The investments were comprised of commercial paper, municipal securities, auction stock, Eurodollar investments, and money markets.

2. UDITPA was approved by the National Conference of Commissioners on Uniform State Laws in 1957. Its purpose was to establish a "uniform

75 P.3d 123, 128 (App.2003). When, as here, the material facts are undisputed, we must determine whether the tax court correctly applied the substantive law to those facts. *S. Pac. Transp. Co. v. Ariz. Dep't of Revenue,* 202 Ariz. 326, 329–30, ¶ 7, 44 P.3d 1006, 1009–10 (App.2002). Questions of statutory interpretation are issues of law subject to de novo review. *Anderson v. Indus. Comm'n of Ariz.,* 205 Ariz. 411, 412, ¶ 2, 72 P.3d 341, 342 (App.2003).

¶ 7 In 1983, the Arizona Legislature enacted a modified version of the Uniform Division of Income for Tax Purposes Act (UDITPA). *See* A.R.S. §§ 43–1131 to –1150 (1998).[2] Pursuant to the Act, Arizona applies an "apportionment formula" to determine its respective share of business income attributable to each multi-state business that has income taxable both within and without Arizona.

¶ 8 Arizona's taxable share of a company's income is obtained by multiplying the company's "business income" (as defined by A.R.S. § 43–1131(1)) by a fraction, "the numerator of which is the property factor plus the payroll factor plus two times the sales factor, and the denominator of which is four." A.R.S. § 43–1139 (Supp.2003). In turn, each of these three factors is itself defined as a fraction, with a numerator consisting of the value or amount of the factor attributable only to Arizona and a denominator composed of the value or amount of the factor everywhere (with certain exceptions not applicable here). See A.R.S. §§ 43–1140 (property factor), –1143 (payroll factor), and –1145 (sales factor). For example, the numerator of the sales factor "is the total sales of the taxpayer in this state during the tax period" and the denominator "is the total sales of the taxpayer everywhere during the tax period...." § 43–1145. The share of a company's business income that is apportionable to Arizona is more readily perceived when expressed formulaically as shown:

method of division of income among the several taxing jurisdictions" to "assure[ ] that a taxpayer is not taxed on more than its net income." Prefatory Note to UDITPA, U.L.A. Div. Inc. Tax. Ann. (2002).

$$\frac{\dfrac{\text{Arizona Property Value}}{\text{Total Property Value}} + \dfrac{\text{Arizona Payroll}}{\text{Total Payroll}} + 2\dfrac{(\text{Arizona Sales})}{(\text{ Total Sales })}}{4}$$

¶ 9 Before 1991, the Arizona apportionment formula weighted these factors equally and divided their sum by three. In 1991, the Legislature modified the apportionment formula to count the sales factor twice and divide the sum by four. 1991 Ariz. Sess. Laws, ch. 189, § 1.

¶ 10 The current version of § 43–1139 thus amplifies the effect any changes in the sales factor, relative to changes in the other factors, have on the amount of Arizona's share in a taxpayer's income. For example, under the revised formula, taxpayers who have a declining sales factor—due to either a decrease in their Arizona sales or an increase in their sales everywhere—show twice the decline in apportioned income they would show relative to a similar decline in one of the other factors. By including the return of principal in its amended returns, Taxpayer increased the sales factor denominator to such an extent that the percentage of business income attributable to Arizona under the formula decreased by 10.7% or $14,221,241.00.

¶ 11 Accordingly, this appeal turns on whether "total sales" in the sales factor denominator includes the return of principal from short-term investments.[3] "Sales" consists of "all gross receipts of the taxpayer not allocated under this article"[4] except as "the context otherwise requires." A.R.S. § 43–1131(5). Thus, we must determine whether the return of principal to Taxpayer is a "sale" as defined by § 43–1131(5).

¶ 12 The cardinal rule of statutory construction "is to ascertain the meaning of the statute and intent of the legislature." *City of Phoenix v. Superior Court*, 139 Ariz. 175, 178, 677 P.2d 1283, 1286 (1984). In construing statutes, we give the words used their ordinary meaning unless the legislature has clearly intended to give a term special meaning. *State v. Cotton*, 197 Ariz. 584, 586, ¶ 6, 5 P.3d 918, 920 (App.2000). In addition, we interpret statutes to give them a fair and sensible meaning and to avoid absurd results. *Ariz. Dep't of Revenue v. Raby*, 204 Ariz. 509, 511, ¶ 15, 65 P.3d 458, 460 (App.2003); *Pfeil v. Smith*, 183 Ariz. 63, 65, 900 P.2d 12, 14 (App.1995). We also recognize that an agency's interpretation of a statute that it implements is entitled to great weight. *Ariz. Water Co. v. Ariz. Dep't of Water Resources*, 208 Ariz. 147, 154–55, ¶ 30, 91 P.3d 990, 997–98 (2004).

¶ 13 Relying on general definitional distinctions between "gross" and "net,"[5] and urging what it characterizes as the "plain meaning" principle of statutory interpretation, Taxpayer argues that the reference to "total sales" in the sales factor (A.R.S. § 43–1145) must be construed to mean "gross receipts" under A.R.S. § 43–1131(5). In other words, according to Taxpayer, all money coming in everywhere, including the return of investment principal, constitutes gross receipts that must be included in the denominator of the sales factor. Taxpayer alterna-

---

3. The tax court also ruled that the dividends and interest received by Taxpayer from its investments were includable in the sales factor denominator. ADOR did not appeal that ruling.

4. The phrase "not allocated under this article" refers to nonbusiness income that is assigned to a particular state. For example, the nonbusiness interest and dividend income of a corporation domiciled in Arizona is allocated to this state. A.R.S. § 43–1137. Pursuant to the definition of "sales," that interest and dividend income would not be included in the sales factor. *See generally* Kendall L. Houghton, Sylvia Dennen, and Joanne Borucki, *Apportionment Opportunities*

*and Problems Involving the Sales Factor*, 12 May J. Multistate Tax'n 10, 14 (2002) (explaining that only apportionable business receipts are included in the sales factor).

5. American Heritage Dictionary of the English Language 798–99 (3rd ed.1992) (defining "gross" as "exclusive of deductions; total"); New Webster's Dictionary of the English Language 427 (7th ed.1981) (defining "gross" as "[o]f or constituting a total without or prior to deductions, opposed to net"); Black's Law Dictionary 632 (5th ed.1979) (defining "gross earnings" as "total receipts of a person or business before deductions").

tively asserts that, even assuming that the meaning of "total sales" is unclear, the statutory scheme should be construed to include the return of principal given the generally applicable rule that ambiguities in tax statutes are resolved in favor of the taxpayer. *See People's Choice TV Corp., Inc. v. City of Tucson,* 202 Ariz. 401, 403, ¶ 7, 46 P.3d 412, 414 (App.2002).

¶ 14 ADOR points out, however, that Taxpayer's arguments would require us to ignore the caveat "unless the context otherwise requires" preceding the definition of "sales" in § 43–1131. *Cf. State v. Heylmun,* 147 Ariz. 97, 99, 708 P.2d 778, 780 (App.1985) (the same prefatory language in A.R.S. § 13–105 means that its definitions "are not to be applied mechanistically and rigidly"). Instead, ADOR asserts that under the circumstances of this case, only the net gain from short-term investments should be treated as a "sale." Otherwise, by including the return of principal, the denominator of the sales factor is distorted by (at a minimum) double-counting the same receipts: first, as revenue generated from retail sales, and, second, as additional revenue received from the corporation's investment of its excess cash.

¶ 15 The tax court, agreeing with ADOR, reasoned that the return of investment principal does not qualify as gross receipts for purposes of the sales factor:

> [D]aily revenue from Walgreen's sales would be considered gross receipts when received. Any excess revenue after payment of debt or other disbursements remains a part of those gross receipts and should be counted as such. However, once that excess revenue is invested in securities or other interest bearing mediums, it loses its characterization as gross receipts and may not be counted a second time as gross receipts simply because the money was withdrawn from an investment in a marketable security or interest bearing account. This is akin to someone taking the $100 left from their [sic] weekly paycheck[,] which is considered income when it was received, depositing it into an interest bearing account[,] then withdrawing the $100 one month later and claiming it as income a second time. That $100 is not income.

¶ 16 Taxpayer argues that the tax court's comparison of the investments to money in a bank account demonstrates its failure to understand the nature of the investments. In response to the tax court's bank analogy, Taxpayer contends that a more appropriate analogy would be to a hypothetical business that uses gross receipts from retail sales of toothbrushes to reinvest in inventory, such as toothpaste, which is then sold to create additional receipts. According to Taxpayer, the additional gross receipts in such a scenario should be treated no differently than the return of principal from its short-term investments. We disagree.

¶ 17 Including gross receipts from the reinvestment of funds in inventory in the sales factor reflects ongoing business activity and does not artificially distort the sales factor as does inclusion of unadjusted gross receipts from investment and reinvestment of intangibles. The purpose of the sales factor is to tax an entity for the benefits it receives by exploiting a market *in that state.* For example, continuing with the dental-hygiene hypothetical, if Taxpayer sells toothbrushes in Arizona's retail market, it receives an additional benefit when it exploits the toothbrush market a second time by reinvesting the toothbrush proceeds to purchase, and then sell, toothpaste. Accordingly, we perceive no inconsistency in treating the proceeds earned from a reinvestment of retail income in inventory sales differently than the return of principal from short-term investments.

¶ 18 Other jurisdictions have also reasoned that a business taxpayer's gross receipts does not include the return of investment principal. In *American Telephone & Telegraph Co. v. Director, Division of Taxation,* 194 N.J.Super. 168, 476 A.2d 800 (Ct.App. Div.1984), the court affirmed the decision of the Tax Court of New Jersey that only net gains from the disposition of short-term investments are includable in the sales factor, explaining:

> We uphold as a general matter the exclusion of gross revenues received by plaintiff from the sale or maturity of investment paper. [I]dle cash can be turned over

repeatedly by investment in short term securities. It is no true reflection of the scope of AT & T's business done within and without New Jersey to allocate to the numerator or the denominator of the receipts fraction the full amount of money returned to AT & T upon the sale or redemption of investment paper. To include such receipts in the fraction would be comparable to measuring business activity by the amount of money that a taxpayer repeatedly deposited and withdrew from its own bank account. The bulk of funds flowing back to AT & T from investment paper was simply its own money. Whatever other justification there is for excluding such revenues from the receipts fraction, it is sufficient to say that to do otherwise produces an absurd interpretation of [the statute].[6] "It is axiomatic that a statute will not be construed to lead to absurd results. All rules of construction are subordinate to that obvious proposition. [Even the rule of strict construction] does not mean that a ridiculous result shall be reached because some ingenious path may be found to that end."

*Id.* at 802 (quoting *State v. Provenzano,* 34 N.J. 318, 169 A.2d 135, 138 (1961)). Similarly, in *Sherwin–Williams Co. v. Indiana Department of Revenue,* 673 N.E.2d 849, 853 (Ind. Tax Ct.1996), the court followed *American Telephone & Telegraph Co.* in holding that " 'gross receipts' for the purpose of the sales factor includes only the interest income, and not the rolled over capital or return of principal, realized from the sale of investment securities." [7]

¶ 19 More recently, in *General Motors Corp. v. Franchise Tax Board,* 120 Cal. App.4th 114, 16 Cal.Rptr.3d 41, *modified on other grounds,* 120 Cal.App.4th 881, 16 Cal. Rptr.3d 41 (2004), a California appellate court reached the same conclusion in a case involving nearly identical facts. General Motors (GM), whose commercial domicile is in Michigan, maintains a "Treasury Department" in New York City to manage its excess cash. *Id.* at 121, 124. GM's Treasury Department used its excess cash to purchase marketable securities, including U.S. Treasury bonds, notes, and bills, and bank certificates of deposit. *Id.* at 123. GM sought to include the return of principal from the securities transactions [8] as "gross receipts" in the denominator of the sales factor in apportioning income to California. *Id.* at 124. After quoting approvingly from *American Telephone & Telegraph Co.* and *General Motors Corp.,* the court opined: "[T]he return of one's own funds is not a receipt from a sale. Therefore, while interest thereon is income, the taxpayer's capital funds are not proceeds from a sale." *Id.* at 129, 16 Cal.Rptr.3d 41.

¶ 20 The rationale of these cases is supported by a report issued by the Multistate Tax Commission (MTC) [9] in 1997 finding that "the inclusion in the sales factor of gross receipts from the generally short term investment and reinvestment of certain intangibles (generally idle cash) held for the future operation of the taxpayer's business, inherently produces incongruous results." After explaining that short-term investment activity by its very nature does not typically produce the type of gross receipts includable in the sales factor of the apportionment formula as contemplated by the drafters of UDITPA and the Compact,[10] the report noted

6. New Jersey, like Arizona, uses a three-factor apportionment formula comprised of property, payroll, and receipt factors. *See* N.J.S.A. 54:10A–4 (2004).

7. Indiana uses an apportionment formula that tracks UDITPA's. *See* Ind.Code Ann. § 6–3–2–2 (2003).

8. The securities transactions in issue were maturities and repurchase agreements (in which a securities broker repurchases or sells the security held in GM's account).

9. The MTC was established in 1967 through the Multistate Tax Compact (Compact) to improve the fairness, efficiency and effectiveness of state tax systems as they apply to interstate and international commerce, and preserve state tax sovereignty. Multistate Tax Compact, *available at http://www.mtc.gov* (last accessed Aug. 23, 2004). Currently 45 states participate in the Compact; Arizona is an associate member. The Compact substantially adopts and incorporates the language governing the division of income contained in UDITPA. *Compare* Compact Article IV *with* UDITPA Article IV.

10. The potentially misleading impact of including gross receipts from the investment and reinvestment of intangibles is aptly illustrated in the report:

that the definition of "sales" is not etched in stone. Instead, the drafters:

> explicitly permitted some reasonable amount of flexibility in their construction. The introduction to Article IV of each document states that "(u)nless the context otherwise requires[,]" certain terms, including the term "Sales", are to have a prescribed meaning. *[We] find that the generally short term investment and reinvestment of certain intangible assets constitutes a different context than that contemplated under Article IV.(1)(g) of the Compact defining "Sales" as "all gross receipts of the taxpayer not allocated . . . ."*

(Emphasis added.) The report recommended that only net gains from the sale or other disposition of intangible personal property be included in the sales factor.[11]

¶ 21 We find unpersuasive Taxpayer's citations to appellate decisions from other UDITPA jurisdictions determining that the gross proceeds from the disposition of certain intangibles or the return of principal from certain types of short-term investments constitutes a "sale." First, to the extent that the cited cases appear to support Taxpayer's

"plain meaning" argument, *see, e.g., Sherwin–Williams Co. v. Johnson,* 989 S.W.2d 710, 714–15 (Tenn.Ct.App.1998) ("If the words of a statute plainly mean one thing they cannot be given another meaning by judicial construction.") (quoting *Henry v. White,* 194 Tenn. 192, 250 S.W.2d 70, 72 (1952)), we disagree that the UDITPA definition of "sales" is a straightforward concept that is susceptible of a plain-reading construction. *See Gen. Motors Corp.,* 120 Cal. App.4th at 128, 16 Cal.Rptr.3d 41 (criticizing such cases as "uncritically decid[ing] that the statute is without any ambiguity and conclud[ing] without lengthy analysis that the transactions constitute 'gross receipts' "). Instead, the context of the transaction must be considered in determining whether a "sale" actually occurred.[12] Second, even were we to adopt the Taxpayer's position on this point, the majority of the cases it relies upon nonetheless approved exclusion of the principal from the sales factor denominator pursuant to their states' version of UDITPA's "relief provision,"[13] which permits a state to use a different apportionment method if the statutory formula does not fairly represent the extent of the taxpayer's business activity within the state. *See Union*

---

> Where a taxpayer uses $10,000,000 in idle cash to reinvest in 30–day Treasury notes over the course of one year, the inclusion of the gross receipts in the sales factor defies economic realities. To represent that investing and reinvesting the same $10,000,000 twelve times in one year fairly represents business activity sufficient to produce $120 million dollars plus a relatively small amount of interest, distorts the apportionment formula by artificially increasing the denominator of the sale factor. Without applying a method to include only net gains from such "trading" of intangibles, the taxpayer doing business in a State where this distortive investment activity does not take place would include the $120 million in receipts in the sales factor denominator but would include none of the receipts in the numerator because the intangibles income in most cases would be sourced to the taxpayer's State of commercial domicile or to the State where the investment activity took place.

**11.** Subsequently, the MTC adopted a new regulation defining "gross receipts" in a manner that specifically excludes the return of principal on short-term investments. *See* MTC Reg.IV.2(a)(5) (added July 27, 2001).

**12.** Taxpayer also focuses on the definition of "sale" in former Arizona Administrative Code

R15–2–1145(A), now recodified as R15–2D–101, which provided "the term 'sales' means all gross receipts derived by the taxpayer from a[sic] transactions and activity in the regular course of such unitary trade or business...." Its reliance on this sentence is misplaced, however, as can be seen by looking at the remainder of the regulation, which set forth various "rules" for determining "sales," including:

> In the case of a taxpayer engaged in manufacturing and selling or purchasing and reselling goods or products, "sales" includes all gross receipts from the sales of such goods or products (or other property of a kind which would properly be included in the inventory of the taxpayer if on hand at the close of the tax period) held by the taxpayer primarily for sale to customers in the ordinary course of its trade or business.

and

> In some cases certain gross receipts should be disregarded in determining the sales factor in order that the apportionment formula will operate fairly to apportion to this state the income of the taxpayer's trade or business.

A.A.C. R15–2–1145(A)(1), (7).

**13.** ULA Div. Inc. Tax § 18 (2002).

 

*Pac. Corp. v. Idaho State Tax Comm'n,* 139 Idaho 572, 83 P.3d 116, 122 (2004) (Union Pacific's practice of including in the sales factor both account receivables and money received from the sale of those accounts "overstates sales ..., the long-term consequence of which would be an inaccurate reflection of [Union Pacific's] sales in Idaho and income from sales escaping taxation"); *Am. Tel. & Tel. Co. v. State Tax Appeal Bd.,* 241 Mont. 440, 787 P.2d 754, 757–58 (1990) (upholding use of UDITPA relief provision to include only net gain from the sale of temporary cash investments in sales factor denominator); *Sherwin–Williams Co.,* 989 S.W.2d at 715 (same). *But see Roger Dean Enter. v. State,* 387 So.2d 358, 363, (Fla.1980) (stating there is a very strong presumption in favor of the standard apportionment formula and against the applicability of the relief provisions); *Deseret Pharmaceutical Co., Inc. v. State Tax Comm'n,* 579 P.2d 1322, 1326 (Utah 1978) ("There are compelling reasons for giving the relief provisions a narrow construction.") (quoting Kessling and Warren, *California's Uniform Division for Tax Purposes Act (Part I),* 15 U.C.L.A. L.Rev. 156 (1967)).[14]

¶ 22 We conclude that the "strict" interpretation approach urged by Taxpayer would create a tax loophole for non-domiciliary businesses neither intended by the Arizona Legislature nor required by the plain meaning of A.R.S. § 43–1131(5) and the related statutory scheme. Accordingly, we reject the Taxpayer's mechanistic interpretation of the term "sales" in A.R.S. § 43–1131(5) and hold that the return of principal from the type of short-term investments at issue here is not includable in the sales factor denominator calculated pursuant to A.R.S. § 43–1145.

## CONCLUSION

¶ 23 For the reasons stated, the judgment of the tax court is affirmed. The Taxpayer's

request for attorneys' fees on appeal is denied as moot. *See* A.R.S. § 12–348(B) (2003).

CONCURRING: DONN KESSLER, Presiding Judge and SUSAN A. EHRLICH, Judge.

---

14. Because we uphold the trial court's decision excluding from "sales" the return of principal from Taxpayer's short-term investments, we need not consider ADOR's alternative argument based on Arizona's relief provision, which provides in relevant part:

    A. If the allocation and apportionment provisions of this article do not fairly represent the extent of the taxpayer's business activity in this state, the ... department may require ... any of the following:

    ....

    2. The exclusion of any one or more of the factors.

    3. The inclusion of one or more additional factors which will fairly represent the taxpayer's business activity in this state.

A.R.S. § 43–1148.