218 P.3d 1083

ARIZONA DEPARTMENT OF
REVENUE, Plaintiff/Appellee,

v.

CENTRAL NEWSPAPERS, INC., Phoenix
Newspapers, Inc., Central Newsprint
Co., Inc., Bradley Paper Co., Topics
Newspapers, Inc., Indianapolis Newspa-
pers, Inc., Muncie Newspapers, Inc., Vin-
cennes Sun Commercial, Vincennes
Newspapers, Inc., McCormick & Co.,
Inc. aka Alexandria Newspapers, Inc.,
McCormick Graphics, Inc., McCormick
Newspapers, Inc., Lee Fulton, Inc., Wes-
tech Expo Corp., Career Services, Inc.,
Homebuyer's Fair, Inc., National School
Reporting Services, Inc., Indiana News-
papers, Inc., Fas Hotline, Center for Mo-
bility Resources, Inc., Caratine & Co.,
Inc., CNE Corp., CNT Corp., CNF Corp.,
Defendants/Appellants.

No. 1 CA–TX 07–0016.

Court of Appeals of Arizona,
Division 1, Department T.

Nov. 3, 2009.

Terry Goddard, Attorney General By Kimberly J. Cygan, Assistant Attorney General, Phoenix, Attorneys for Plaintiff/Appellee.

Steptoe & Johnson LLP By Bennett Evan Cooper, Patrick Derdenger, Dawn R. Gabel, Randall T. Evans, Phoenix, Attorneys for Defendants/Appellants.

## OPINION

IRVINE, Judge.

¶ 1 This corporate income tax case addresses whether Public Law 86–272 precludes the state from including an out-of-state partnership's revenues in the numerator of the apportionment formula of an Arizona consolidated return. The partnership's only nexus to Arizona is its shipment of newsprint to a buyer within the state. The partnership is partly owned by corporations that have elected to file a consolidated return with Arizona. Because the corporations included in the consolidated return are considered to be a single taxpayer for apportionment purposes, and a portion of the partnership's income was properly included in the consolidated income, we find that it was proper to include a share of the partnership's sales in the numerator of the sales factor. Therefore, we affirm the judgment of the Arizona Tax Court.

## FACTS AND PROCEDURAL BACKGROUND

¶ 2 Central Newspapers, Inc. ("CNI"), a corporation based in Indiana, is the parent of a group of corporations. Its subsidiaries include Bradley Paper Company ("Bradley"), Central Newsprint Co., Inc. ("Central Newsprint"), Indiana Newspapers, Inc. ("INI"), and Phoenix Newspapers, Inc. ("PNI"). PNI publishes the *Arizona Republic,* a daily newspaper.

¶ 3 In 1985, a group of newspaper publishers formed Ponderay Newsprint Company ("Ponderay"), a Washington general partnership, to build and run a newsprint mill in the State of Washington. Ponderay's purpose was to provide a reliable source of newsprint

to enable newspaper companies to meet their publishing demands.

¶ 4 During tax years 1995 to 1998 Central Newsprint and Bradley held general partnership interests in Ponderay of 10% and 3.5%, respectively. Central Newsprint is a wholly owned subsidiary of CNI, and Bradley is a wholly owned subsidiary of Central Newsprint. Following a business restructuring, between December 29, 1998 and the end of 1999, INI became the owner of the 13.5% interest in Ponderay. INI is a wholly owned subsidiary of CNI. Unrelated third parties held the remaining 86.5% of Ponderay. Central Newsprint, Bradley, and INI do not themselves engage in business activities in Arizona.

¶ 5 At all relevant times, Ponderay conducted no business activities in Arizona beyond the solicitation of orders for its newsprint sales to PNI. Ponderay accepted or rejected newsprint orders at its Washington offices, filled orders from inventories located outside Arizona, and shipped newsprint to PNI via common carrier. Ponderay did not maintain sales representatives or other employees in Arizona, nor did it maintain a sales office, store inventory, or other property here.

¶ 6 Between 1995 and 1999, CNI and its subsidiaries [1] (collectively, "CNI") filed Arizona consolidated corporate income tax returns in accordance with Arizona Revised Statutes ("A.R.S.") section 43–947 (2006).[2] Because Bradley, Central Newsprint, and INI were included in the consolidated group, CNI's consolidated income for each year included 13.5% of Ponderay's net income. As part of the process of apportioning CNI's multistate income, for tax years 1995 and

1996 CNI included a pro rata share of Ponderay's payroll, property and sales in the denominator of its apportionment formula, but not in the numerator. See generally Arizona's Uniform Division of Income for Tax Purposes Act ("UDITPA"), A.R.S. §§ 43–1131 to –1150 (2006 & Supp.2008). For 1997, 1998, and 1999, CNI did not include Ponderay's payroll, property or sales in either the denominator or numerator.

¶ 7 After auditing these returns, the Arizona Department of Revenue ("Department") determined that Ponderay's factors should have been included in both the numerator and denominator of CNI's apportionment formula. This determination resulted in small tax underpayments for 1995 and 1996, and larger overpayments for 1997, 1998, and 1999. The net result was a refund to CNI of slightly more than $500,000, excluding interest. CNI protested, arguing that its refund should have been greater because Ponderay's factors should have been excluded from the numerator of the apportionment formula. The Department denied the protest.

¶ 8 CNI appealed to the Arizona State Board of Tax Appeals (the "Board"). The issue was whether the Department properly calculated the numerator of the UDITPA sales factor. The Board ruled in CNI's favor, and in 2006 the Department appealed to the tax court in accordance with A.R.S. § 42–1254(A) (2006). After the parties briefed and argued cross-motions for summary judgment, the tax court ruled for the Department. The court reasoned that inclusion of the Ponderay receipts in the numerator necessarily followed from inclusion of its total receipts in the denominator. The tax court entered judgment, and this appeal followed.

---

1. The subsidiaries included PNI, an Arizona corporation; Central Newsprint, an Indiana corporation; Bradley, a Delaware corporation; Topics Newspapers, Inc., an Indiana corporation; INI, an Indiana corporation; Muncie Newspapers, an Indiana corporation; Vincennes Newspapers, Inc., an Indiana corporation; McCormick and Company, Inc., a Louisiana corporation; McCormick Graphics, Inc., a Louisiana corporation; Lee Fulton, Inc., a Louisiana corporation; Alexandria Newspapers, Inc., a Louisiana corporation; Career Services, Inc., an Arizona corporation; Homebuyer's Fair, Inc., an Arizona corporation; Westech ExpoCorp, a California corporation; Carantin & Co., Inc., an Arizona corporation; National School Reporting Services, Inc., a Delaware corporation; FAS Hotline, an Arizona corporation; Center for Mobility Resources, Inc.; CNF Corp., an Arizona corporation; CNE Corp., an Arizona corporation; CNT Corp., an Arizona corporation; and Indiana Newspapers, Inc., an Indiana corporation.

2. We cite the current version of the applicable statute because no revisions material to this decision have since occurred.

## DISCUSSION

¶ 9 This court reviews the tax court's summary judgment ruling de novo. *Wilderness World, Inc. v. Ariz. Dep't of Revenue,* 182 Ariz. 196, 198, 895 P.2d 108, 110 (1995). We likewise apply the de novo standard in reviewing the tax court's construction of statutes and findings that combine facts and law. *Ariz. Dep't of Revenue v. Ormond Builders, Inc.,* 216 Ariz. 379, 383, ¶ 15, 166 P.3d 934, 938 (App.2007).

¶ 10 Our task is to ascertain statutory intent. *Walgreen Ariz. Drug Co. v. Ariz. Dep't of Revenue,* 209 Ariz. 71, 73, ¶ 12, 97 P.3d 896, 898 (App.2004). In doing so, we give effect to each pertinent portion of a statute. *State Bd. of Dispensing Opticians v. Schwab,* 93 Ariz. 328, 331, 380 P.2d 784, 787 (1963). In addition, we accord great weight to the Department's interpretation because it implements Arizona's UDITPA statutes. *Walgreen,* 209 Ariz. at 73, ¶ 12, 97 P.3d at 898.

¶ 11 Arizona has enacted an income tax on corporations with the purpose of imposing on "each corporation with a business situs in this state a tax measured by taxable income which is the result of activity within or derived from sources within this state." A.R.S. § 43–102(A)(5) (2006). Arizona law imposes a tax on every corporation's entire "Arizona taxable income." A.R.S. § 43–1111 (2006). "Arizona taxable income" is defined as federal taxable income subject to adjustments specified in A.R.S. §§ 43–1121 to –1130.01 (2006 & Supp.2008). "Every corporation subject to the tax imposed by this title shall make a return to the department" even if a corporation has no federal taxable income or a federal return is not required. A.R.S. § 43–307(A) (2006).

¶ 12 If a corporation conducts a multistate business, Arizona requires that its net income be allocated and apportioned under Arizona's version of UDITPA. A.R.S. § 43–1132(A). Under UDITPA, certain nonbusiness income is "allocated" to designated states, based on factors such as the location of property and the taxpayer's commercial domicile. A.R.S. §§ 43–1134 to –1138. Business income is generally "apportioned" between the states in which the corporation does business using a formula defined in the statutes. A.R.S. § 43–1139(A). Arizona's formula employs three factors—sales, property, and payroll—by which a taxpayer's Arizona sales, property, and payroll are compared to the taxpayer's operations in all states. A.R.S. § 43–1139 to –1147.[3]

¶ 13 The main dispute in this case is over the calculation of the sales factor. The sales factor is a fraction, the numerator of which represents "the total sales of the taxpayer in this state during the tax period." A.R.S. § 43–1145; Ariz. Admin. Code ("A.A.C.") R15–2D–803 (the sales factor numerator is "the gross receipts attributable to this state and derived by the taxpayer from transactions and activity in the regular course of its trade or business"). "Sales" are "all gross receipts of the taxpayer not allocated under this article" except as "the context otherwise requires." A.R.S. § 43–1131(5); *see also* A.A.C. R15–2D–801(A)(1). Sales of tangible personal property are generally considered to be in Arizona if the property is delivered or shipped to a purchaser in the state. A.R.S. § 43–1146. The denominator of the sales factor consists of the taxpayer's total sales. A.R.S. § 43–1145.

¶ 14 Generally, each corporation files a separate income tax return, but there are circumstances in which related corporations file a single return that includes the income of each included corporation. One example of this is when a group of commonly controlled corporations engaged in a single business files a combined report. *See* A.R.S.

---

3. As originally adopted by Arizona, UDITPA gave equal weight to each of the three factors. 1983 Ariz. Sess. Laws, ch. 287, § 5 (enacting A.R.S. § 43–1139). In 1991, the statute was amended to double the weight of the sales factor. 1991 Ariz. Sess. Laws, ch. 189, § 1 ("All business income shall be apportioned to this state by multiplying the income by a fraction, the numerator of which is the property factor plus the payroll factor plus two times the sales factor, and the denominator of which is four."). This formula, giving 50% of the weight to sales as compared to property and payroll, applies to the years at issue in this case. More recently, the statute allows a taxpayer to elect to weigh the sales factor at either 50% or 80% of the total. A.R.S. § 43–1139(A)(3) (Supp.2008).

§ 43–942 (2006). As we explained in *State ex rel. Arizona Department of Revenue v. Talley Industries, Inc.*, 182 Ariz. 17, 893 P.2d 17 (App.1994), a combined report is appropriate when "there is a substantial interdependence of basic operations among the various affiliates or branches of the business." *Id.* at 24, 893 P.2d at 24 (quoting I Jerome R. Hellerstein and Walter Hellerstein, *State Taxation* ¶ 8.11[5], at 8–92 (2d ed.1993) ). Such a business, often referred to as being "unitary" because it effectively operates as a single unit, files a single return because of the "difficulty of determining the amount of in-. come attributable to various stages of producing, refining, manufacturing, transporting, buying, selling, and the like, conducted in different states." *Id.* at 25, 893 P.2d at 25; *see also* A.C.C. R15–2D–401. In Arizona, a "unitary business that files a combined return shall use an apportionment formula that combines the property, payroll, and sales figures of all of the unitary group members before calculating the factors." A.C.C. R15–2D–404(B).

¶ 15 Arizona also recognizes another method by which multiple corporations could file a single state return—the consolidated return. Federal tax law has allowed a consolidated return for some time, *see* 26 U.S.C. § 1501 *et seq.*, but Arizona law did not allow the practice before 1994. 1994 Ariz. Sess. Laws, ch. 41, § 26 (codified as A.R.S. § 43–947). The Arizona statute allows an affiliated group of corporations that files a federal consolidated return to do the same for Arizona. The common parent of the corporate group elects to "consolidate the taxable income of all members of the affiliated group, regardless of whether each member is subject to tax under" the Arizona income tax code. A.R.S. § 43–947(A). Under federal law, an affiliated group generally means a chain of corporations with a common parent owning and controlling at least 80% of each subsidiary. 26 U.S.C. § 1504 (2006). All members of the affiliated group, as that term is defined in federal law, must be included in the consolidated return. 26 U.S.C. § 1501 (2006).

¶ 16 The Arizona statute also provides that an affiliated group shall allocate and apportion its income to Arizona under UDITPA, and for such purposes "the Arizona affiliated group is considered to be and shall be treated as a single taxpayer." A.R.S. § 43–947(F); *see also* A.A.C. R15–2D–404(C) ("An Arizona affiliated group that files a consolidated return shall use an apportionment formula that combines the property, payroll, and sales figures of all of the members of the Arizona affiliated group before calculating the factors."). A significant difference between a combined report and a consolidated return is that the corporations included in the consolidated return need not constitute a unitary business. A consolidated return may include corporations having no connection to Arizona and engaged in businesses completely separate from other members of the group.

¶ 17 This case also requires us to consider the income tax treatment of partnerships. Generally, partnerships are not subject to a direct income tax, but each partner must include its proportionate share of the partnership's income on its own income tax return. *See* 26 U.S.C. § 704(b) (2006) and Treasury Regulation § 1.704–1(b)(1). The Department has interpreted Arizona law as requiring a corporation that is a partner in a partnership that has income from Arizona to file an Arizona income tax return and report its share of that income. *See* Arizona Corporate Tax Ruling CTR 94–2, 1994 WL 16014815 (April 4, 1994). If the income is "business income" under UDITPA, then the corporation's "proportionate share of the partnership's property, payroll, and sales should be included in the appropriate factors in determining the apportionment ratio of the corporate partner." *Id.*

¶ 18 Under federal tax law, a partnership is treated "as an independently recognizable entity apart from the aggregate of its partners." *United States v. Basye*, 410 U.S. 441, 448, 93 S.Ct. 1080, 35 L.Ed.2d 412 (1973). Basye recognized that "partnerships are entities for purposes of calculating and filing informational returns;" but also are "conduits through which the taxpaying obligation passes to the individual partners in accord with their distributive shares." *Id.* at 448 n. 8, 93 S.Ct. 1080. The character of an income item in the partnership's distributive

share "shall be determined as if such item were ... incurred in the same manner as incurred by the partnership." 26 U.S.C. § 702(b) (2006).

¶ 19 Although this case involves the intersection of corporate, partnership, and multistate taxation, the ultimate issue is the calculation of CNI's Arizona corporate income tax. It is undisputed that CNI elected to file a consolidated return for 1995 and later years. The result of this election was that corporations within its group previously not required to report their income to Arizona were required to be included in CNI's consolidated Arizona return. It is also undisputed that Bradley, Central Newsprint, and INI were properly included in CNI's federal and Arizona consolidated returns. It appears that the only reportable income for each corporation was its distributive share of Ponderay's partnership income. The record shows that this income was included on CNI's consolidated return as "other income," and was included in the group's Arizona income. CNI does not argue that including this income on its tax return was improper and agrees that this income was properly characterized as "business income" for UDITPA purposes.

¶ 20 Because CNI's distributive share of Ponderay's income is business income, the Department argues that CNI should apply CTR 94–2 and apportion all of CNI's income, including its share of the Ponderay income, using the UDITPA formula. This would be done by including 13.5% of Ponderay's payroll, property, and sales in CNI's apportionment formula. Because Ponderay's property and payroll were all outside Arizona, Ponderay's total property and payroll would be added to the denominator of CNI's Arizona apportionment formula, but nothing would be added to the numerator. For the sales factor, Ponderay's total sales would be included in the denominator, but only the sales to PNI in Arizona would be included in the numerator.

■ ¶ 21 CNI's only dispute with the Department's proposed tax treatment is over the inclusion of Ponderay's Arizona sales in the numerator of the sales factor. It argues that a federal statute, Public Law No. 86–272, codified as 15 U.S.C. § 381 (2006), precludes Arizona from taxing the income of Ponderay, and that this exemption from Arizona tax passes through to CNI, precluding the inclusion of Ponderay's Arizona sales in the numerator of the sales factor.

¶ 22 Public Law 86–272 was enacted following a United States Supreme Court decision holding that a state may tax income from the interstate operations of a corporation domiciled outside its borders even though the corporation only solicited orders in the taxing state. *Nw. States Portland Cement Co. v. Minnesota*, 358 U.S. 450, 79 S.Ct. 357, 3 L.Ed.2d 421 (1959). The court held that soliciting orders was sufficient contact with the taxing state so long as "the levy is not discriminatory and is properly apportioned to local activities within the taxing State forming sufficient nexus to support the same." *Id.* at 452, 79 S.Ct. 357. Congress responded by enacting Public Law 86–272, specifically 15 U.S.C. § 381(a), which provides:

No State, or political subdivision thereof, shall have power to impose, for any taxable year ending after September 14, 1959, a net income tax on the income derived within such State by any person from interstate commerce if the only business activities within such State by or on behalf of such person during such taxable year are either, or both, of the following:

(1) the solicitation of orders by such person, or his representative, in such State for sales of tangible personal property, which orders are sent outside the State for approval or rejection, and, if approved, are filled by shipment or delivery from a point outside the State; and

(2) the solicitation of orders by such person, or his representative, in such State in the name of or for the benefit of a prospective customer of such person, if orders by such customer to such person to enable such customer to fill orders resulting from such solicitation are orders described in paragraph (1).

¶ 23 The purpose of Public Law 86–272 was to set a "lower limit" on state taxation, *Heublein, Inc. v. South Carolina Tax Com-*

*mission,* 409 U.S. 275, 280, 93 S.Ct. 483, 34 L.Ed.2d 472 (1972), and to establish a "minimum standard" for imposition of a state net-income tax based upon the solicitation of interstate sales. *Wis. Dep't of Revenue v. William Wrigley, Jr., Co.,* 505 U.S. 214, 222, 112 S.Ct. 2447, 120 L.Ed.2d 174 (1992). By setting this limit, Congress "implicitly determin[ed] that the State's interest in taxing business activities below that limit was weaker than the national interest in promoting an open economy." *Heublein,* 409 U.S. at 279–84, 93 S.Ct. 483 (upholding a state regulatory requirement that liquor manufacturers' representatives do more than solicit sales in the state, even though the requirement effectively eliminated the manufacturer's protection under P.L. 86–272). Congress was particularly concerned with the burden on businesses of having to file tax returns in states where they did nothing other than solicit sales. As noted in the House Report on the proposed bill,

> compliance with the diverse tax laws of every jurisdiction in which income is produced will require the maintenance of records for each jurisdiction and the retention of legal counsel and accountants who are familiar with the tax practice of each jurisdiction. This will mean increases in overhead charges, in some cases to an extent that will make it uneconomical for a small business to sell at all in areas where volume is small.

*In the Matter of Disney Enter., Inc. v. Tax Appeals Tribunal,* 10 N.Y.3d 392, 859 N.Y.S.2d 87, 888 N.E.2d 1029, 1037 (2008) (quoting H.R.Rep. No. 86–936, at 2 (1959)).

¶ 24 Public Law 86–272 applies to a state seeking to tax "any person" with income from interstate commerce if the activities of "such person" are limited to solicitation of orders within that state. For our purposes,

two essential requirements of the statute must be met before it applies to an entity. First, the entity must have income derived from interstate commerce. Second, the activities of the person deriving the income must be limited to solicitation of orders.

¶ 25 The Department does not seriously dispute that Public Law 86–272 would prevent it from directly taxing Ponderay. Rephrasing the statute to specify Arizona as the taxing state and Ponderay as the person at issue would make the statute read as follows:

> [Arizona] shall [not] have power to impose a net income tax on income derived from within [Arizona] by [Ponderay] from interstate commerce if the only business activities within [Arizona] by or on behalf of [Ponderay] are [solicitation of sales].

Ponderay's Arizona activities did not extend beyond the solicitation of orders for newsprint sales. Ponderay accepted or rejected orders from its Washington offices, filled the orders there, and shipped newsprint via common carrier to PNI in Arizona. It therefore fits within the safe harbor provisions of Public Law 86–272, and Arizona cannot directly tax its income.

¶ 26 The Department argues, however, that it is not taxing Ponderay. It points out that the tax at issue is imposed on CNI's consolidated group, which includes Ponderay's partners Bradley, Central Newsprint, and INI. The Department's position is that Public Law 86–272 applies only if CNI fits within its specific language. Therefore, because CNI's activities within Arizona plainly exceed solicitation of orders for shipments of tangible personal property, the federal statute does not apply. We agree with the Department.

¶ 27 In this case, the taxpayer claiming immunity is CNI.[4] Rephrasing the stat-

4. Because CNI filed a consolidated return, it is regarded as a single taxpayer for Arizona tax purposes. Therefore, it is appropriate to regard it as the "person" we look to under Public Law 86–272 to determine if it is taxable. See *In the Matter of Disney,* 859 N.Y.S.2d 87, 888 N.E.2d at 1036 (construing Public Law 86–272 and concluding that "it is reasonable to conclude that the unitary group ... is a 'person' for purposes of the statute"). CNI attempts to distinguish Disney by pointing to the concurring opinion, which

took issue with the majority's conclusion that including a company's receipts in the numerator of the apportionment fraction was not the equivalent of imposing a tax on that company. *Disney,* 859 N.Y.S.2d 87, 888 N.E.2d at 1040–41 (Smith, J., concurring). We need not enter this debate. The majority and concurring opinions agreed on what is relevant to our decision—Public Law 86–272 does not bar a state from including in a corporate group's apportionment formula the sales of entities that would not them-

ute to specify CNI as the person at issue results in this reading:

> [Arizona] shall [not] have power to impose a net income tax on income derived from within [Arizona] by [CNI] from interstate commerce if the only business activities within [Arizona] by or on behalf of [CNI] are [solicitation of sales].

CNI plainly fails the prong of the test requiring that its activities within Arizona be limited to solicitation of orders. CNI operates a newspaper in Arizona and has significant property, payroll, and sales within the state. These activities make Public Law 86–272 inapplicable.

¶ 28 CNI argues, however, that our analysis must look beyond CNI's income to the source of the income being taxed. CNI argues that Public Law 86–272 applies to Ponderay, so its income is exempt from Arizona income tax. It then argues that as a matter of partnership tax law the exempt character of Ponderay's income passes through to its partners, even those who are subject to taxation by Arizona, so Arizona cannot indirectly tax Ponderay by including its sales in the numerator of CNI's sales factor. We disagree.

■ ¶ 29 We do not interpret Public Law 86–272 as creating a class of tax-exempt income for sales in interstate commerce. CNI focuses on the portion of Public Law 86–272 prohibiting a state from imposing a net income tax on the "income derived within such State by any person from interstate commerce." That prohibition only applies, however, "if the only business activities within such State by or on behalf of such person" are limited to solicitation of orders. If the

person's activities exceed the solicitation of orders any barrier to apportioned state taxation of that person disappears. *See Wrigley,* 505 U.S. at 231, 112 S.Ct. 2447 ("A company either has complete net-income tax immunity or it has none at all, even for its solicitation activities."). The primary trigger for the application of the statute is not the receipt of income from interstate commerce, but the lack of contacts by the taxpayer with the taxing state. Consequently, as we read it, Public Law 86–272 does not make certain income tax-exempt, but prevents a state from exercising taxing *jurisdiction* over a business engaged in interstate commerce when its only contact with a state is conducting a mail-order operation from outside the state's boundaries. Thus, under Public Law 86–272 the income of a business that does nothing more than solicit sales in Arizona is potentially beyond Arizona's taxing jurisdiction if certain conditions are met, but the income itself is not tax-exempt.[5]

¶ 30 Our interpretation is supported by the specific exemptions contained in the statute, which show that the statute's focus is on jurisdiction over certain taxpayers, not the income itself. The statute does not apply to a corporation incorporated in the taxing state or any individual who is domiciled in, or a resident of, such state. 15 U.S.C. § 381(b). These taxpayers will be subject to taxation by a state even if their business activities within the state are limited to solicitation of sales, simply because of their independent nexus with the taxing state. Because of that nexus, their income is not exempt from tax, even though it is indistinguishable from the income of a corporation or individual having no separate contacts with the taxing state.[6]

---

selves be taxable by the state. *Id.* ("As the majority explains in section B of its analysis, the relevant 'person' for purposes of a Public Law 86–272 analysis is not Video, but the consolidated group.").

**5.** Some items of income, such as interest on federal obligations, are exempt from state taxation both to a partnership and its partners. The exempt character of the income passes through to the partners. Arizona law seems to require such items to be disregarded entirely in the corporate tax calculation, both from inclusion in the partner's taxable income and the calculation of the apportionment factors. *See* A.A.C. R15–2D–

903(4) ("Items of income that are not subject to taxation under A.R.S. Title 43 or judicial decision is excluded from the sales factor. Examples of these items include controlled corporation dividends, gross-up dividends, Subpart F dividends, and interest from federal obligations.").

**6.** Under CNI's interpretation of the statute, Ponderay's income would be exempt from Arizona taxation even if all of its partners were Arizona corporations or individual residents. Given the plain language of the statute excluding Arizona corporations and individual residents from its scope, we believe such an interpretation is incorrect.

¶ 31 CNI complains that allowing Arizona to tax CNI on its distributive share of Ponderay's income is contrary to the principle of partnership taxation that the character of an item of income flows through to the partners. We disagree. The income retains its character; it is simply not the tax-exempt character CNI wishes to give it. The character of the income will be as business income derived from interstate commerce by a business whose only activities within Arizona were solicitation of orders. As noted above, this does not make the income tax-exempt. The income simply has the potential to be beyond Arizona's taxing jurisdiction if the taxpayer has only limited contacts with Arizona. Whether Ponderay's income is taxed by Arizona when it passes through to its partners will depend on whether Arizona has jurisdiction over the particular partner-taxpayer reporting the income. Ponderay's partners who have no connection with Arizona other than their distributive share of Ponderay's income will not be drawn within Arizona's jurisdiction merely because of Ponderay's sales into Arizona. A partner such as CNI that is independently subject to Arizona jurisdiction, however, should include Ponderay's income because the limitations of Public Law 86–272 do not apply.

¶ 32 Apportioning all of CNI's business income by applying the property, payroll, and sales factors associated with that income is consistent with the Department's prior practices. Although the intersection of UDITPA with a consolidated return and partnership income has not been previously addressed, the Department has consistently interpreted Arizona law as requiring the UDITPA apportionment formula to include the activities of all members of a taxable corporate group, even those not directly subject to tax under Public Law 86–262. In *Airborne Navigation Corporation v. Arizona Department of Revenue,* 1987 WL 50031 (Ariz.Bd.Tax.App. Feb. 5, 1987), the Arizona Board of Tax Appeals upheld this interpretation by holding that the apportionment formula should include Arizona sales by a corporation which does not itself conduct business in Arizona but which is part of a unitary group of corporations that files an Arizona combined report. Several rulings of the Department specifically apply this holding. *See* Arizona Corporate Tax Ruling CTR 95–2 (CCH Arizona Tax Reporter ¶ 300–179, Mar. 13, 1995) (superseded by CTR 99–5) ("when a group of companies is conducting a unitary business and a part of that unitary business is conducted within the state, the activities of all members of the unitary group will be included in both the numerator and denominator of the sales factor"); Arizona Corporate Tax Ruling CTR 99–5, 1999 WL 33648427 (1999) (same). We have recognized that an administrative agency's interpretation of a statute it enforces is accorded "great weight" and "if acquiesced in for a long period of time, will not be disturbed unless manifestly erroneous." *Ariz. Dep't of Revenue v. Raby,* 204 Ariz. 509, 512, ¶ 17, 65 P.3d 458, 461 (App.2003). In this case, Bradley, Central Newsprint, and INI are members of the consolidated group, and the Department seeks to apportion their business income as a part of that group by including the property, payroll, and sales associated with that income. We conclude that CNI has failed to show that the Department's interpretation is erroneous.[7]

¶ 33 CNI argues, however, that Arizona's own partnership tax returns take a different approach and show that we must conduct the nexus analysis at the partnership level. The forms provided to us do allow for a partnership level apportionment of the partnership's income among the states and this apportionment would be used by the partners to prepare their own taxes. Nevertheless, we find this argument unpersuasive for several rea-

7. Although Arizona's long-standing position is that Public Law 86–272 does not prevent it from including Arizona sales from entities without independent nexus to Arizona in the numerator of the sales factor, other jurisdictions are divided on the issue. The issue is generally described as between the *"Joyce"* rule and the *"Finnigan"* rule, referring to the names of two California State Board of Equalization decisions. *See generally Citicorp N. Am. v. Franchise Tax Bd.,* 83 Cal.App.4th 1403, 100 Cal.Rptr.2d 509, 514–15 (2000). Arizona has adopted the *Finnigan* rule. *See* Arizona Corporate Tax Ruling CTR 99–5, section VII(E); *Airborne Navigation, supra; Disney,* 859 N.Y.S.2d 87, 888 N.E.2d at 1039 n. 7 (citing *Airborne* ).

sons. First, there is no evidence that Ponderay ever filed an Arizona partnership return. Indeed, under Public Law 86–272 it is unlikely that Arizona could have required it to do so. Therefore, we fail to see how the Arizona partnership forms affect CNI. Second, the instructions themselves provide that corporate partners should report their distributive share of the partnership income according to the corporate instructions. The corporate instructions have not been included in this record, but it is clear that under UDITPA and CTR 94–2 any business income reported by a corporation must be apportioned by that corporation. We see nothing inconsistent with this requirement in the partnership forms. Finally, by admitting that it was proper to include income from Ponderay in its own income, and that Ponderay's sales (and property and payroll) are includible in the denominator of the apportionment formula, CNI effectively concedes that apportionment should take place at the corporate level. It simply disagrees as to the calculation.

¶ 34 CNI also argues that the Department is estopped from taxing Ponderay's income by its position in a prior appeal that "Ponderay is a separate legal entity." *Phoenix Newspapers, Inc. v. Ariz. Dep't of Revenue*, No. 1 CA-TX 04–0014, at 12–13, ¶ 22 (Ariz.App., Dec. 6, 2005) (mem.decision). That appeal concerned whether Ponderay's losses during 1993 and 1994, the two years prior the tax years at issue, could be included in a combined report including PNI, Central Newsprint, and Bradley. This court agreed with the Department that Ponderay was not part of a unitary business with PNI, Central Newsprint, and Bradley, so its activities could not be attributed to its partners. CNI argues this prior holding bars the Department from now arguing that the partnership should not be considered in analyzing Public Law 86–272.

¶ 35 The Department responds that its position in the present case is not contrary to its position in the 2005 case. It states that the issue for those tax years was whether PNI was unitary with Bradley and Central Newsprint even though PNI had no ownership interest in the other two corporations and there was no transfer of assets,

goods, or services among the three entities. PNI's argument that the three corporations were unitary hinged on the partnership interests in Ponderay held by Bradley and Central Newsprint. PNI argued that the sales between Ponderay and PNI should be treated as made directly by Bradley and Central Newsprint. The Department argues that the issue decided in *Phoenix Newspapers*, whether PNI, Bradley, and Central Newsprint had the operational integration necessary to form a unitary business, was completely different from the apportionment issue presented here.

¶ 36 We agree with the Department. In the prior case, Bradley and Central Newsprint could only be included in an Arizona income tax return with PNI if they were operationally integrated enough to constitute a unitary business. Once CNI elected to file an Arizona consolidated return for all members of its affiliated group that issue no longer existed. Moreover, because this court found that Bradley and Central Newsprint were not unitary with PNI, it was not necessary to address or decide how any partnership income from Ponderay would be apportioned.

¶ 37 In this case, CNI has elected to include the income of Bradley, Central Newsprint, and INI in its consolidated return. Arizona law treats CNI's affiliated group as a single taxpayer. There is no dispute that CNI properly included its proportionate share of Ponderay's income in its tax return. Public Law 86–272 does not prevent the Department from including the Ponderay sales into Arizona in the sales factor's numerator. Therefore, we conclude that including CNI's share of Ponderay's payroll, property, and sales in both the numerator and denominator of the apportionment formula was correct.

## CONCLUSION

¶ 38 We affirm the tax court's judgment.

CONCURRING: LAWRENCE F. WINTHROP, Presiding Judge and PHILIP HALL, Judge.